UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In re:

REFCO, LLC,                                      Case No. 1:07-cv-06599-PAC

             Debtor.

_____


**APPELLANTS' MEMORANDUM OF LAW**


BRIAN M. DELAURENTIS, P.C.
Attorneys for Creditor-Appellants,
the Foo Claimants
36 W. 44th St., Suite 610
New York, NY 10036
212-354-6300
Brian M. DeLaurentis (BD 4995)

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**                                          iv

**BASIS OF APPELLATE JURISDICTION**                               vii

**STATEMENT OF ISSUE PRESENTED**                                  vii

**STANDARD OF REVIEW**                                            1

**FACTS & STATEMENT OF THE CASE**                                 1

    Substantive facts                         1

    *In re LFG, LLC*                           4

    *In re Refco, LLC*                         7

    The Underlying Decision                    7

**ARGUMENT**                                                      8

    Summary of Argument                        8

    Analysis                                   9

I.   THE BANKRUPTCY COURT IMPROPERLY               9
    PRECLUDED THE FOO CLAIM.

    A.  ISSUE PRECLUSION IS NOT WARRANTED
        BECAUSE THE 2002 ISSUE WAS COMPLETELY
        DIFFERENT FROM THE ISSUES IN THIS
        MATTER.                         10

    B.  PRECLUSION HERE IS CONSTITUTIONALLY
        INFIRM BECAUSE IT DENIES THE FOO
        CLAIMANTS THEIR DAY IN COURT AGAINST      13
        REFCO.

    C.  PRECLUSION IS INAPPROPRIATE HERE
        BECAUSE OF THE DIFFERENCE IN THE STAKES
        BETWEEN THE TWO MATTERS: DISPUTE
        RESOLUTION TIMING VERSUS A POTENTIAL      14
        $1.4 MILLION JUDGMENT.

D.  THE PRIOR DECISION WAS NOT FINAL AND IS
    NOT CAPABLE OF HAVING PRECLUSIVE
    EFFECT.                                                    16

E.  OTHER PRINCIPLES ALSO MAKE PRECLUSION
    INAPPROPRIATE.                                             19

    1.  Offensive non mutual collateral estoppel is           19
        inappropriate here.

    2.  Laches also bars giving the 2002 order preclusive
        effect.                                               19

II.  THE FOO CLAIMS WERE NOT PROPERTY OF THE LFG              20
     ESTATE.

III.  THE LFG-RGL RELEASE DOES NOT BAR THE FOO
      CLAIM AGAINST REFCO.                                    22

    A. THE RELEASE FAILS TO BIND EITHER THE FOO
       CLAIMANTS OR THE  RESPONDENT IN THIS
       CONTESTED MATTER.                                      22

    B. EVEN IF THE RELEASE BOUND THE PARTIES,
       THIS CLAIM WAS CARVED OUT OF ITS
       APPLICATION.                                           23

    C. EVENTS SUBSEQUENT TO THE SETTLEMENT'S
       APPROVAL DEMONSTRATE ITS LACK OF
       BINDING EFFECT.                                        24

IV. THE LFG-FOO RELEASE DOES NOT PRECLUDE FOO'S              25
    REFCO CLAIM.

V.   THE EXISTENCE OF LFG TRUST IS NOT A BAR HERE.            27

VI. BANKRUPTCY LAW DETERMINES THE DEFINITION
    OF "AFFILIATE."                                           28

    A.  THE BANKRUPTCY CODE DEFINITION OF                     28
        AFFILIATE GOVERNS INTERPRETATION OF
        THE SETTLEMENT.

    B.  REFCO, LLC CAN NOT BE CONSIDERED AN                   29
        RGL AFFILIATE UNDER THE CODE.

# TABLE OF AUTHORITIES

## CASES

*Bear, Stearns & Co. v. 1109580 Ontario, Inc.,* 409 F.3d 87, 91          10
(2nd Cir. 2005)

*Benjamin v. Coughlin*, 905 F.2d 571, 575 (2nd Cir. 1990)          13
*cert. den.* 498 U.S. 951 (1990)

*Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Foundation,*          14, 19
402 U.S. 313, 329 (1971)

*Fisher v. Apostolou (In re Lake States Commodities, Inc.),*          11, 22
155 F.3[rd] 876 (7th Cir. 1998)

*Gagliardi v. Village of Pawling*, 18 F.3d 188, 191 (2nd Cir. 1994)          1

*Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2nd Cir. 1986)          16, 18, 19
*cert. den.* 480 U.S. 948 (1987)

*Jim Beam Brands Co. v. Beamish & Crawford Ltd.,* 937 F.2d 729          10
(2nd Cir. 1991) *cert. den.* 502 U.S. 1094 (1992)

*In re Colonial Reality Co.,* 980 F.2d 125 (2nd Cir. 1992)          11, 14, 15, 20-
                                                                      22

*In re Colonial Realty Co.*, 1991 WL 487192 (D.Conn., 1991)          21

*In re First City Bancorporation of Texas, Inc.,* 1995 WL 710917          29
(Bkrtcy.N.D.Tex.1995)

*In re Heghmann,* 316 B.R. 395, 400 (BAP 1st Cir. 2004)          17, 18

*In re Giampietro*, 317 B.R. 841 (Bkrtcy.D.Nev. 2004)          30 n. 25

*In re Icarus Holding, LLC*, 391 F.3d 1315 (11th Cir. 2004)          11 n.10

*In re Loral Space & Communications, Ltd.,*
53 Collier Bankr.Cas.2d 555, 2004 WL 2979785 (S.D.N.Y. 2004)          1, 22, 29

*In re Maruki USA Co., Inc.,* 97 B.R. 166 (Bkrtcy.S.D.N.Y. 1988)          30

*In re Saunders,* 101 B.R. 303, 304-06 (Bankr. N.D. Fla. 1989)          21

*In re Solutia, Inc.,* 2007 WL 1302609 (Bkrtcy. S.D.N.Y. 2007)          26 n. 23

iv

*In re U.S. Lines, Inc.,* 318 F.3rd 432 (2nd Cir. 2003)                vii

*In re West,* 339 B.R. 557 (Bankr. E.D.N.Y. 2006)                10

*In re WestPoint Stevens, Inc.,* 333 B.R. 30 (S.D.N.Y. 2005)        1, 24, 27

*In re Yates,* 332 B.R. 1, 4 (BAP 10th Cir. 2005)                17, 18

*Koch Refining v. Farmers Union Central Exchange, Inc.,*        11 n. 10
 831 F.2d 1339 (7th Cir. 1987) *cert den.* 485 U.S. 906 (1988)

*Liona Corp. Inc. v. PCH Assocs. (In re PCH Assocs.)*        10, 12, 16
 949 F.2d 585 (2nd Cir. 1991)

*Lummus Co. v. Comm. Oil Refining Co.,* 297 F.2d 80 (2nd Cir. 1961)        16
*cert. den.* 368 U.S. 986 (1962).

*Marlene Industries Corp. v. N.L.R.B.,* 712 F.2d 1011 (6th Cir. 1983)        12

*Matter of Colonial Realty Co.*, 134 B.R. 1017 (Bankr. D.Conn. 1991)        14, 21

*Matter of Missionary Baptist Foundation of America, Inc.,*        29
712 F.2d 206, 210 (5th Cir. 1983)

*Matter of Sporting Club at Illinois Center,* 132 B.R. 792        30
(Bkrtcy. N.D. Ga. 1991)

*Metromedia Co. v. Fugazy,* 983 F.2d 350, 366 (2nd Cir. 1992)        16
*cert. den.* 508 U.S. 952 (1993)

*Otherson v. Department of Justice, I.N.S.,* 711 F.2d 267        15
(D.C. Cir. 1983)

*Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330 (1979)        15

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank,*        10, 15, 16
68 F.3rd 1478 (2nd Cir. 1995)

*U. S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235 (1989)        29

*Valley Disposal, Inc. v. Central Vermont Solid Waste Management*        10, 13
31 F.3d 89 (2nd Cir. 1994)

**STATUTES**

| | |
|---|---|
| 11 U.S.C. § 101(2) | 29, 30 |
| 11 U.S.C. § 101(31) | 29 |
| 11 U.S.C. § 362 | 6, 11, 21, 27 |
| 11 U.S.C. §544 | 21 n. 15 |
| 11 U.S.C. §548 | 21 n. 15 |
| 28 U.S.C. § 157 | 18 |
| 28 U.S.C. § 158 | vii, 18 |

**OTHER AUTHORITIES**

| | |
|---|---|
| Bankr. R. 3001 | 19 |
| Fed. R. Civ. P. 12 | 7 n. 7 |
| House Report, H.R.8200, H.R.Rep.No.95-595, 95th Cong., 1st Sess., Sept. 8, 1977, 123, U.S.Code Cong. & Admin.News 1978, p. 5787, 6084 | 14 |
| Restatement (Second) of Judgments § 28(5)(c) | 15 |

## BASIS OF APPELLATE JURISDICTION

The basis for appellate jurisdiction of this appeal is provided in 11 U.S.C. § 158(a)(1) as the underlying order was a final one that expunged the over $1.4 million Foo Claim.  Order, p. 2 (expunging claim); *In re U.S. Lines, Inc.,* 318 F.3d 432 (2nd Cir. 2003)(appellate review of expunged claim).

## STATEMENT OF ISSUES PRESENTED

1.  Did the Bankruptcy Court err in holding that the Foo Claim was barred by the doctrine of issue preclusion?

2.  Did the Bankruptcy Court err in its alternative holding that Foo Claim was property of the LFG, LLC estate?

3.  Did the Bankruptcy Court err in its alternative conclusion that the LFG-Refco Group Ltd., LLC settlement agreement also bound the Foo Claimants?

4.  Did the Bankruptcy Court err in its alternative conclusion that the LFG-Foo settlement precluded claims against Refco?

5.  Did the Bankruptcy Court err in its alternative conclusion that Refco, LLC was an affiliate of Refco Group Limited within the ambit of the LFG-Refco settlement?

## STANDARD OF REVIEW

The legal determinations of the bankruptcy court are reviewed *de novo* and its findings of fact are reviewed under a clearly erroneous standard. *In re WestPoint Stevens, Inc.,* 333 B.R. 30 (S.D.N.Y. 2005)(reversing Judge Drain on plain reading of credit agreement); *see In re Loral Space & Communications, Ltd.,* 53 Collier Bankr.Cas.2d 555, 2004 WL 2979785 (S.D.N.Y. 2004)(reversing Judge Drain on plain reading of statute).

Here, the facts relied upon by Judge Drain were not in material dispute and consist of the DeLaurentis Declaration (with exhibits), the Trustee's objection (with exhibits) and the Supplemental Stipulation of Facts.

The Bankruptcy Court determined that this matter would be determined akin to a Fed. R. Civ. P. 12 motion for judgment on the pleadings. Consequently, expunging the Foo claim is appropriate only if, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 191 (2nd Cir. 1994) *quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

Thus, the Respondent was obliged to demonstrate that it was beyond doubt that the Foo Claimants could not prove up a set of facts entitling them to relief. Appellants submit that the Respondent Bankruptcy Trustee of Refco, LLC failed to do so.

## FACTS & STATEMENT OF THE CASE

### Substantive Facts

During 1999, Dennis Foo was a proprietary floor trader. A proprietary[1] floor trader is an individual who physically stands on the trading floor of a commodities exchange yelling BUY!

---

[1] A trader is "proprietary" when he does so for his own account; in other words, he runs his own business for his own benefit from the profit of his trading activity. DeLaurentis Declaration, ¶ 2.

and SELL! to purchase/sell futures and options contracts (also known as derivatives).

The trades were hand written on note cards, and at the end of each trading day, "cleared" through a registered futures commission merchant ("FCM") that ensured that his note cards of trading activity matched up against those he traded with during the day.  During 1999, Foo "cleared" through LFG, LLC a registered FCM ("LFG").  *Id.* at ¶¶ 3-4.

In addition to its clearing house and compliance roles, a FCM also functioned as an accountant and a bank.  A floor trader's accounts were maintained at the FCM and not a bank; and the FCM also typically tracked trading related expenses, interest and funds available for withdraw for each floor trader.  *Id.* at ¶ 4.

Foo and LFG entered into a "Member Trading Agreement", whereby LFG permitted Foo to meet his margin requirements for his trading activity with LFG funds.  LFG, in exchange, would get a share of Foo's profits as "interest" on the borrowed money.  Foo had also deposited capital with LFG for meeting margin requirements.  Trustee Ex. A, C.

1999 was a very good year for Mr. Foo with trading profits of over $3.6 million dollars. DeLaurentis Decl., Ex. A.  Pursuant to a written accounting between Foo and LFG's CEO (Steve Klemen), LFG and Foo agreed on February 21, 2000 that Foo's share of the net trading profits due him was $2.3 million dollars together with $380,000 in trading capital on deposit with LFG. DeLaurentis Decl., Ex. A.

On behalf of LFG, Klemen asked Foo if LFG could hold Foo's profits and capital while it reorganized and recapitalized.  Foo consented to this arrangement as a favor to Klemen, who had "backed" Mr. Foo as a trader for many years prior to 1999.  DeLaurentis Decl. ¶ 9.

Unknown to Foo at the time, two groups were vying to control LFG.  One supported Klemen; and the other, Refco Group Ltd., LLC ("RGL") and its subsidiaries (collectively,

hereinafter, "Refco"), wanted to hostilely take over LFG.  On or about April 28, 2000, RGL prevailed.  However, the take over was aggressively and clumsily executed.  DeLaurentis Decl. ¶ 12.  To date, Appellants do not know which Refco entity actually took over LFG's assets.  The Debtor in this action, Refco, LLC ("LLC") is a third level subsidiary of RGL.[2]

On or about April 28, LFG transferred **all** of its assets, including Foo's 1999 trading profits to RGL or one of its subsidiaries.  *Id.*  This fact was revealed during a July 2001 deposition of LFG's then CEO (as a debtor in possession), Edwin Buchanan[3].  *Id.* at ¶ 19.

Buchanan's testimony also revealed that this transfer was materially different than the written Asset Purchase Agreement (APA) between LFG and RGL that recited that LFG would

---

[2] RGL was the sole member of Refco Regulated Companies, LLC (RRC).  RRC, in turn, was the sole member of Refco Global Futures, LLC (RGF).  RGF, in turn, was the sole member of Refco, LLC, the debtor herein.  Thus, Refco, LLC is a third derivative subsidiary of RGL through two intermediaries, RRC and RGF. Supplemental Stipulation of Facts, *passim.*

RGL also filed for bankruptcy, but its estate is being administered separately in a case also assigned to Judge Drain, Case No. 05-60006.

[3]  Q.  Are you familiar with the terms of the Refco deal?
  A.  Broadly.
[ . . . ]
Q.  On all of the financials.  So the debtor transferred all of its assets in exchange for the consideration recited in the agreement?
A.  No.  The consideration was for the selected customer accounts.  But they transferred all the assets to be returned at a later date.  Those that were -- those that they did not purchase, i.e., the  non-customer business.

Q.  Why was the deal structured that way?
A.  It wasn't.  It was a last minute change.

Q.  So your testimony is that the deal was effected in a manner different from the written recitation?
A.  I don't know.  All I know is what I – to the best of my knowledge what actually took place.

Q.  Okay.  Then let's start at the beginning on that.  What did actually take place in terms of the transfer?
A.  On the weekend of the 28th of April, the assets of LFG, LLC, the debtor, was – were transferred to Refco.

Q.  What assets were transferred?
A.  To the best of my knowledge, all the assets were transferred, more or less all the assets were transferred.

Q.  Why?
A.  I don't know.  I think there was some confusion as to -- as to what assets Refco was going to purchase and what they were not going to purchase.  And to facilitate the account transfer, they transferred everything.

keep the proprietary floor trader accounts such as Foo's.  The APA was not the operative document governing the Refco takeover.  *Id.*

The consequences of the takeover are the nexus of the Foo claim against Refco, both RGL and LLC, the Debtor herein.[4]


### *In re LFG, LLC*

Legal efforts to recover the 1999 trading profits began in December 2000.  LFG filed for bankruptcy in the Northern District of Illinois in April 2001 in a matter captioned *In re LFG, LLC,* No. 01 B 12604.  Mr. Foo was represented in that action by counsel herein and (now U.S. Bankruptcy Judge) Pamela Hollis as local counsel.  *Id.* at ¶¶ 13-15.  Refco also appeared in that proceeding.

The Foo claim litigation against LFG in that action contested the priority that his claim was to be given, and not its amount.  No Refco entity took an active role in the Foo-LFG dispute; and similarly, Foo took no active role in the LFG-Refco dispute.

Tragically, in the midst of this litigation, Mr. Foo was killed in the World Trade Center on September 11, 2001.  The Foo Claimants here are his widow Mary Lou Lee and their two minor children, intestate heirs to this claim.  *Id.* at ¶¶ 20-21.

Once adjudication of the Foo-LFG claim resumed in 2002, this counsel determined that based upon the Buchanan deposition, Refco could be held liable for the Foo claim given the LFG takeover under various theories.  A summons and complaint was filed in New York State

---

[4] Foo's claims center on "following the money," his money, which went from LFG to Refco literally overnight.  In addition, Foo's claims also rely on successor liability where LFG was a free standing entity one day, and a Refco subsidiary the next.  Refco points to the APA to support that it has no liability to the Foo claimants.  Thus, a clear and controlling material question of fact exists between the parties – which deal was the real deal?  Was it really the APA; or was there another written or oral arrangement under which the Foo claimants can legally prevail?  The Foo claimants have over $1.4 million at stake on the answer to this question of fact and the consequential conclusions of law to be made from it.

Supreme Court (New York County) on May 30, 2002 naming LLC as defendant.  Trustee Ex. J.

Coincidentally, also on May 30, 2002, LFG filed a motion seeking approval of a settlement with Refco in the LFG-Refco adversary action that had been commenced in November 2001 (*LFG v. Refco,* No 01 A 1194, Bankr. N.D. Ill.)[5].  *Id.*, Ex. E.

The settlement called for Refco to make payments through 2005 to the LFG Liquation Trust ("Liquidation Trust").  The settlement also had an indemnification provision that permitted Refco to deduct payments on claims it was obligated to pay to proprietary traders such as Mr. Foo.  *Id.*  For the purposes of this litigation, the most important provision of the LFG-RGL settlement was that the Foo Claimants were not among those who were bound by it.[6] *Id.*

As noted above, the LFG-RGL settlement contained an indemnification provision incorporating the APA by reference that permitted Refco to deduct from any payments due to LFG any sums Refco had to pay to proprietary traders such as Foo.  *Id.* at § 3(iv).  RGL put LFG on notice that the Foo state court litigation would hold up any payments to LFG under that indemnification provision.    DeLaurentis Decl. ¶ 26.

As a result LFG sought to ***stay*** the Foo claim litigation in state court to ensure timely payments to it under the LFG-Refco settlement.  LFG sought that relief solely on the basis that the Foo-Refco state court litigation affected property of the LFG estate pursuant to the indemnity provision in the LFG-Refco settlement.   Of central importance to this appeal is that ***no injunctive relief was sought*** to compel Foo to dismiss the state court action either by LFG or RGL.  Thus, LFG's motion sought to affect only the ***timing and not the substance*** of the Foo-

---

[5] The Foo Claimants did not appear in the separately indexed adversary action between LFG and Refco and were not served with any papers in connection with it.

[6] **SECTION 9.  Binding Effect.** This Agreement shall be binding on LFG and Refco and upon LFG's and Refco's successors and assigns (including any trustee hereinafter appointed as a representative of the [LFG] Estate) and shall inure to the benefit of the parties respective successors and assigns.

Refco dispute.

Judge Black's decision did not require the Foo Claimants to dismiss the state court action and did not find that the bankruptcy stay had been violated by filing the state court action. Rather, Judge Black ruled:

> ACCORDINGLY, any **further** proceedings by the respondents against Refco, and any pursuit of presently filed complaints in the Supreme Court of New York, will be in violation of the automatic stay and will place the debtor in a position to seek appropriate sanctions.

Trustee, Ex. L (emphasis added).

Judge Black's order was purely a timing decision; that the Foo-Refco dispute was **temporarily stayed** pursuant to 11 U.S.C. § 362 until that stay was lifted pursuant to 11 U.S.C. §362(c)(2)(A). Judge Black did not find: 1) that filing the suit violated the stay; 2) that the Foo Claimants had acted in contempt of the Bankruptcy Court or the automatic stay; 3) the Foo Claimants were compelled to dismiss the state court action against Refco; 4) the Foo Claimants were required to pay damages, fines or attorney's fees to any party or the court; or 5) enter judgment against the Foo claimants. *See id.*

As Judge Black's order was purely and exclusively a timing issue, the Foo Claimants took no further action on the state court action because of this order and the subsequent bankruptcy filing of *In re Refco, LLC,* discussed, *infra.*

In January 2003, the Foo claim with LFG was settled with the allowance of a $1.5 million unsecured claim. Trustee, Ex. M. As both the operative agreement and a draft of the settlement show, Refco was intentionally carved out of any benefits to the LFG-Foo settlement agreement to preserve the state court litigation. DeLaurentis Decl. ¶ 29, Ex. D. Notably, the LFG-Foo settlement did not require discontinuation of the state court litigation; only that it remained stayed. The tacit understanding was that when the LFG case closed, the stay of the state court

6

action would also terminate with it and the Foo Claimants would then be free to pursue the Refco claims. *Id.* at ¶ 32. Refco, who was served with a copy of the settlement, did not object.

### *In re Refco, LLC*

The LFG case was closed in Chicago on November 23, 2005, the Wednesday before Thanksgiving. Refco, LLC filed for bankruptcy in New York two days later on Friday, November 25, 2005. *Id.,* Ex. F. Thus, the New York state court litigation stay from the LFG stay was immediately replaced by the Refco stay.

The Foo Claimants filed a timely proof of claim in July 2006 for $1,477,910. Respondent, the LLC Trustee, served his notice of objection in April 2007[7]. In addition, the LFG Liquidation Trust also filed a timely proof of claim, asserting that RGL still owed it over $100,000 pursuant to the LFG-Refco settlement. *Id.,* Ex. E. Upon information and belief, this claim is the sole reason the Liquidation Trust remains in existence. *Id.* at ¶ 31.

### The Underlying Decision

Judge Drain issued his decision orally, immediately after hearing argument on the matter. Order; Bench Ruling, *passim*. In ordering the Foo Claim expunged, Judge Drain concluded:

> I conclude under the doctrine of issue preclusion the Foo estate is bound by the earlier determination of Judge Black in the LFG bankruptcy case that these claims asserted by the Foo claimants are the LFG estate's property or were property of the LFG estate during LFG's bankruptcy case.

Bench Ruling, p. 5.

Perhaps sensing the potential infirmity of the wholesale preclusion of the Foo Claim with

---

[7] Judge Drain, in an informal telephone conference call limited  the Trustee's objection to a Fed. R. Civ. P. 12 equivalent, concerning: the LFG-Foo Release; the LFG-RGL release; determining if the Foo Claim was property of the LFG estate; and the preclusive effect of orders in the LFG proceedings for the purposes of the initial hearing.

a prior order that only affected the timing of when it could pursue Refco, Judge Drain also ruled:

> Alternatively, however, it is clear to me (although I really needn't go through this analysis because of the principal of issue preclusion) that Judge Black was entirely correct in his ruling and that, even if he had not so ruled, these claims were claims of LFG's estate.

*Id.* at p. 7.

Judge Drain's conclusion that the Foo Claim was property of the LFG estate also was the foundation supporting his conclusion that the LFG-RGL settlement bound the Foo Claimants and that LFG had been "giving Foo ice in winter" when it expressly excluded from the LFG-Foo settlement the requirement that the state court litigation be discontinued. *Id.* at p. 12.

Finally, Judge Drain concluded without analysis that Refco, LLC was a subsidiary of RGL after supplementary briefs were submitted to him on that point.    Order, p. 2.

## ARGUMENT

### Summary of Argument

Appellants seek reversal of the underlying Bankruptcy Court order (per Drain, J.) which held that a prior 2002 stay order (*pendente lite*) in another bankruptcy matter wholly precluded Appellants' claims in this bankruptcy pursuant to issue preclusion/collateral estoppel. Appellants' difficulty with this conclusion is that the prior 2002 order only addressed the timing of when Appellants and Respondent would resolve their differences, but this order appealed from aborts Appellants' efforts from ever resolving the $1.4 million claim against LLC.

Four principles of preclusion law in the context of collateral estoppel support why reversal is appropriate:  different issues were addressed in the prior proceeding; preclusion here deprives Appellants of due process; preclusion is inappropriate where the difference in stakes between the prior decision and this one are dramatically different; and the prior order was not

final for preclusion (or any other) purposes.

The Bankruptcy Court also held (alternatively) that the Appellants' claims were property of the preceding bankruptcy estate. This holding directly contradicts Second Circuit case law.

Lastly, the Bankruptcy Court did not address the applicability of two releases executed in the prior bankruptcy which, because this is a *de novo* review, may well be addressed herein.

## Analysis

I.   THE BANKRUPTCY COURT IMPROPERLY PRECLUDED THE FOO CLAIM.

Judge Drain wrongly gave preclusive effect to Judge Black's 2002 decision because it concerned only the **timing** of adjudicating the Foo-Refco dispute and not the **substantive merit** of the Foo claims.

Judge Drain relied on the four factors itemized in *Liona Corp. Inc. v. PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585, 593 (2nd Cir. 1991) as to the elements of issue preclusive/collateral estoppel.[8] However, more than just these four factors are required for preclusive effect. In addition, a court must satisfy itself that application of the doctrine is fair. *Bear, Stearns & Co. v. 1109580 Ontario, Inc.,* 409 F.3d 87, 91 (2nd Cir. 2005).

Appellants submit that four principles of the issue preclusion doctrine (collateral estoppel) demonstrate the error of the underlying decision: 1) issue preclusion requires the **identical issue** to be decided in the prior action, which was not the situation in this matter; 2) constitutionally, this preclusion has improperly denied the Foo Claimants due process because they never had their day in court vis a vis Refco; 3) equitably, preclusion is inappropriate

---

[8] [P]reclusion applies only if: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

because the stakes between the stay motion and the Foo Claim in this matter are radically different (resolution timing v. $1.4 million); and 4) under federal common law, Judge Black's decision was not a final conclusion for preclusion purposes.

### A.  ISSUE PRECLUSION IS NOT WARRANTED BECAUSE THE 2002 ISSUE WAS COMPLETELY DIFFERENT FROM THE ISSUES IN THIS MATTER.

Issue preclusion requires that the issues in the two litigations be identical, and that the identical issue was necessary to reaching the prior, final judgment.  *E.g. Jim Beam Brands Co. v. Beamish & Crawford Ltd.,* 937 F.2d 729, 734 (2nd Cir. 1991) *cert. den.* 502 U.S. 1094 (1992).

"[O]ne of the most difficult problems in the application of [collateral estoppel] is to delineate the issue on which litigation is, or is not, foreclosed by the prior judgment." *Valley Disposal, Inc. v. Central Vermont Solid Waste Management,* 31 F.3d 89 (2nd Cir. 1994). Appellants submit that Judge Drain erred in determining what issues Judge Black resolved.

Appellants contend that Judge Drain leapt to conclusions in reviewing Judge Black's order.  As *Valley Disposal* cautions, determining the issues in the prior action can be difficult.  In determining the issue, preclusion law requires a court to consider the totality of the circumstances.  *E.g., In re West*, 339 B.R. 557, 569 (Bkrtcy. E.D.N.Y. 2006); *see Remington Rand Corp. v. Amsterdam-Rotterdam Bank,* 68 F.3rd 1478 (2nd Cir. 1995)(discussed, *infra*).

The central issue in this litigation is:  Does Refco have substantive liability of over $1.4 million to the Foo Claimants in connection with their hostile takeover of LFG in April, 2000? By contrast, the central issue addressed in Judge Black's order was:  Did the automatic stay affect when the Foo Claimants could proceed against Refco?  It was all he was requested to determine.  Trustee, Ex. K, ¶ 17.  Judge Drain concluded that the common issue was:  Were the Foo Claims property of the LFG estate?  Bench Ruling, p. 5.

A review of the motion practice in connection with Judge Black's order conclusively shows that LFG's thrust was that the ***indemnity*** provisions of the LFG-Refco settlement[9] meant that the state court litigation would access property that was to come to the LFG estate in violation of the stay.  LFG repeatedly emphasized at the time:

> … Lee admits that the purpose and believed result of the Complaints is to control the payments that Refco is supposed to make to LFG under the Refco Agreement, prevent those payments from being made to LFG, and hopefully obtain possession of those payments … Trustee, Ex. K, ¶14.

> "Simply put, Respondents' lawsuit represents a stay violation at its most fundamental level – an effort to divert a receivable of the Debtor to them for their personal benefit." *Id.* at Ex. N, p. 9.

> *Respondents seek to recover on a receivable owed to LFG that is related to that transfer. Id.* at Ex. N, p. 11 (emphasis in original).

> The money owed to LFG by Refco is an asset of LFG's bankruptcy estate, and Lee's and Dinowitz's attempt to pick up that asset for themselves is a violation of Section 362(a)(3) of the Bankruptcy Code.  *Id.* at Ex. N, p. 13-14 (conclusion of reply).

Despite the foregoing repetition relying on the indemnity point, Judge Drain's order relied on the secondary position[10] that the Foo claims were property of the LFG estate.[11]

However, Judge Drain missed that LFG ***abandoned*** that position in its subsequent reply. LFG abandoned that position because of *Fisher v. Apostolou (In re Lake States Commodities, Inc.),* 155 F.3rd 876 (7th Cir. 1998) which directly held that a creditor's causes of action were ***not*** property of the estate.  *Accord, In re Colonial Realty Co.,* 980 F.2d 125 (2nd Cir. 1992)(discussed

---

[9]   *See, infra,* III. B., for a detailed discussion of the indemnity provision.

[10]  *Compare* Trustee Ex. K, ¶ 14 *with* ¶ 15.

[11]  "In paragraph 15 of that [LFG's stay enforcement] motion, LFG asserted to the bankruptcy court presiding over its case that the claims in the state court litigation, if they had validity, would be property of LFG's estate, citing a leading case in this area:  *Koch Refining v. Farmers Union Central Exchange, Inc.,* 831 F.2d 1339, 1343 (7th Cir. 1987) [*cert den.* 485 U.S. 906 (1988)]." Bench Ruling, p. 5

   Although the Bankruptcy Court characterized *Koch Refining* as a "leading" case, other courts have been highly critical of it. *E.g., In re Icarus Holding, LLC,* 391 F.3d 1315 (11th Cir. 2004). The controlling Seventh Circuit case in this matter is *Fisher v. Apostolou (In re Lake States Commodities, Inc.),* 155 F.3rd 876 (7th Cir. 1998) which expressly held that the creditor's causes of action were not property of the estate and not *Koch.*

*infra,* at II.).  LFG's withdrawal on this point is express in its discussion of *Fisher*:

> In the case at hand there [are] a couple of significant differences. … [U]nlike *Fisher*, where the cause of action was alleged to be property of the estate, in this case it is the resources Respondents seek to recover on through their cause of action [that] is property of the estate. [fn omitted].  *Id.* [citing *Fisher*].  In the instant case, LFG's receivable exists, and it is uncontraverted that it constitutes property of LFG's bankruptcy estate.

Ex. N, p. 10-11.

Judge Drain missed that the indemnity provision was the ***only*** basis for seeking the stay order when Judge Black reviewed the papers and heard oral argument.  The LFG-Refco ***receivable*** under the settlement agreement was the necessary "property of the estate" issue in dispute and not ownership of the Foo Claimants causes of action against Refco.

Thus, the sole necessary basis for Judge Black's order staying the Foo Claimants from pursuing Refco in state court was the indemnity/receivable issue in the LFG-Refco settlement. This was the only issue decided in the stay motion, and not the substantive ownership of the Foo Claimant's causes of action as property of the LFG estate nor their underlying viability.  The discrete issue decided by Judge Black in 2002 was that the Foo Claimants had to wait to pursue Refco until the LFG bankruptcy was completed.  Only the critically necessary determinations in a prior matter are entitled to preclusive effect; dicta is not.  *E.g., In re PCH, supra,* at 593; *Marlene Industries Corp. v. N.L.R.B.,* 712 F.2d 1011 (6th Cir. 1983)(as to dicta).

The clarity that a different issue was decided in 2002 than this one *sub justice* is demonstrated by the plain reading of Judge Black's order.  Judge Black found that "The respondents' claims against Refco overlap with the debtor's Refco claims, and both are "intimately connected to events within the control of the bankruptcy court"[.]" Notably, Judge Black did not find the Foo claims against Refco to be owned by the Debtor and noted that the claims "overlap."  Overlapping means that some claims are commonly shared, but others are not.

Judge Black concluded that the ***indemnity provisions of the settlement*** triggered the stay of the state court action.[12] Clearly, if Judge Black believed that the Foo claims against Refco were owned by the estate, he would have just ordered that the state court litigation be dismissed with prejudice, rather than implicitly concluding the causes of action were owned by the Foo Claimants. Trustee Ex. L ("their related causes of action"). Instead, he allowed the state court litigation to remain open but stayed until the end of the LFG bankruptcy; the same result as *Fisher*. Judge Black knew what the Foo Claimants, LFG and Refco all knew: that the Foo-Refco dispute would be postponed and resolved at a later date. DeLaurentis Decl. ¶ 23. Judge Drain missed that delicate balance struck in 2002.

Thus, the differences in the issues between the two litigations bar giving the prior order preclusive effect. *Benjamin v. Coughlin*, 905 F.2d 571, 575 (2nd Cir. 1990) *cert. den.* 498 U.S. 951 (1990)(identical issues are required for preclusive effect).

## B.  PRECLUSION HERE IS CONSTITUTIONALLY INFIRM BECAUSE IT DENIES THE FOO CLAIMANTS THEIR DAY IN COURT AGAINST REFCO.

"It has been recognized that we must "balance our 'desire not to deprive a litigant of an adequate day in court' against 'a desire to prevent repetitious litigation of what is essentially the same dispute.' " *Valley Disposal, Inc. v. Central Vermont Solid Waste Management,* 31 F.3d 89 (2nd Cir. 1994)(internal quotations omitted).

Judge Drain materially erred by holding that Judge Black's 2002 timing order precluded litigation of the underlying merits of the Foo-Refco dispute.  Without question, whether or not the automatic stay applies in bankruptcy is a procedural question, and not a substantive one. *In re*

---

[12] "The debtor and Refco have arrived upon a settlement agreement that will considerably benefit the debtor.  By pursuing their related causes of action in a separate venue, the respondents improperly threaten to hamper the debtor's recovery from Refco.  This result would prevent the distribution envisioned by the code." Trustee Ex. L.

*Colonial,* 980 F.2d 125 (2nd Cir. 1992) *affirming Matter of Colonial Realty Co.*, 134 B.R. 1017,

1021 (Bankr. D.Conn., 1991)("Being subject to the stay in no way limits the FDIC in its superior

right to the defined fraudulent conveyance action" "The stay is procedural, remedial, not

substantive.");  House Report, H.R.8200, H.R.Rep.No.95-595, 95th Cong., 1st Sess., Sept. 8,

1977, 123, U.S.Code Cong. & Admin.News 1978, p. 5787, 6084[13].

       Judge Drain, however, by applying collateral estoppel here, converted the conclusions

rendered in a timing dispute into a complete bar against ever reaching the substance of the $1.4

million Foo-Refco dispute.  The 2002 order deciding a procedural timing issue has now been

transformed into a substantive decision that the Foo Claimants have no right to their day in court

against Refco.  Judge Black only concluded that the Foo Claimants had to wait until LFG was

done, but Judge Drain went much further and concluded that because the Foo Claimants lost the

timing issue they also lost all right to ever proceed against Refco for over $1.4 million with it.

       At no point were the Foo Claimants afforded a full and fair opportunity to litigate the

validity of their grievances with Refco.  A full and fair opportunity to litigate a dispute is

constitutionally required, as well as equitably necessary.  *See, e.g., Blonder-Tongue*

*Laboratories, Inc. v. Univ. of Ill. Foundation,* 402 U.S. 313, 329 (1971).  The underlying order

here is not constitutionally sound jurisprudence, and simply takes preclusion too far.

       C.  PRECLUSION IS INAPPROPRIATE HERE BECAUSE OF THE DIFFERENCE
           IN THE STAKES BETWEEN THE TWO MATTERS: DISPUTE RESOLUTION
           TIMING VERSUS A POTENTIAL $1.4 MILLION JUDGMENT.

       Where the stakes of a litigation are materially different even though the issue is identical,

collateral estoppel is inappropriate.  *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330

(1979).  In the Second Circuit, that legal principle was applied and prevented the use of

---

[13] "The stay . . . does not affect the creditor's substantive rights in any way. It operates only as a procedural delay.
The creditor remains entitled to full satisfaction."

preclusion in *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478 (2nd Cir.

1995). As *Remington* notes, collateral estoppel is not to be mechanically applied, particularly

where the losing party in the first action had little incentive to litigate the matter fully. *Id.* at

1486; *accord Otherson v. Department of Justice, I.N.S.,* 711 F.2d 267 (D.C. Cir. 1983);

Restatement (Second) of Judgments § 28(5)(c).

In this case, the stakes are worth over $1.4 million dollars to the Foo Claimants.

DeLaurentis Decl., Ex. G. By stark contrast, the 2002 order concerned only when the Foo

Claimants could proceed against Refco.

Litigation of the 2002 order concerned only the procedural aspect of when the Foo

Claimants could proceed against Refco and not the validity of the claim. The Second Circuit has

held that the automatic stay is procedural and not substantive. *In re Colonial, supra.* By

contrast, here, timing is not the issue. Rather, the issue is the ability of the Foo Claimants to

recover over $1.4 million.

*Remington, supra,* is instructive on this point. In *Remington,* the plaintiff had originally

obtained a judgment of $221 million against a judgment proof entity in federal district court.

Thereafter, the plaintiff pursued banks that controlled the judgment proof entity in a subsequent

litigation and prevailed against them on a derivative liability claim in a jury trial. The trial court

held that the banks were collaterally estopped from challenging the damages, having had a full

and fair opportunity to do so through their controlled proxy in the first action. Judgment against

the banks was entered for $339 million, which represented the prior judgment plus interest.

The Second Circuit reversed that judgment, determining that the difference in stakes

between the litigations barred the use of collateral estoppel as to damages. *Id.* Because the

judgment proof entity had no funds to pay a judgment with, the Second Circuit held the entity

lacked the incentive to vigorously defend the determination.  Now that the controlling banks

faced a damages award against them, the amount would be much more vigorously addressed on

remand because the banks had the funds to satisfy judgment.

*Remington* demonstrates the totality of the circumstances approach to properly employ

preclusion.  The matter was examined from a reality based approach that took full account of the

parties' relative positions in the earlier litigation and refused to apply preclusion through rote

satisfaction of the four part criteria.

Here, the Bankruptcy Court erred by not examining what was at stake in 2002 and what

is at stake today.  The dramatic difference between the two, timing v. $1.4 million, demonstrates

that giving preclusive effect to the 2002 decision is inequitable under these circumstances.

### D.  THE PRIOR DECISION WAS NOT FINAL AND IS NOT CAPABLE OF HAVING PRECLUSIVE EFFECT.

Contrary to Judge Drain's conclusion, Judge Black's order was not a final one.

Admittedly, finality for issue preclusion purposes in the Second Circuit is a moving target.  *Gelb*

*v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2nd Cir. 1986) *cert. den.* 480 U.S. 948 (1987)("inability

to obtain appellate review, or the lack of such review once an appeal is taken, does prevent

preclusion"); *Liona Corp. Inc. v. PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585, 593 (2nd Cir.

1991)(final judgment); *Metromedia Co. v. Fugazy,* 983 F.2d 350, 366 (2nd Cir. 1992) *cert. den.*

508 U.S. 952 (1993)(finality requires less than finality for appeal purposes).  However, whether

or not an appeal could have been taken is an important factor (if not deciding) in determining an

order's preclusive effect.  *Metromedia, supra, citing Lummus Co. v. Comm. Oil Refining Co.,*

297 F.2d 80, 89 (2nd Cir. 1961) *cert. den.* 368 U.S. 986 (1962).

Judge Drain determined that Judge Black's order was final:

> As it determined that the automatic stay applied because of the ownership of the claims by LFG. It fully resolved that dispute and enjoined the Foo claimants from proceeding further in their litigation in New York state court so that LFG could deal with the claims in its bankruptcy case, which, in fact, LFG did.

Bench Ruling, p.6.

Judge Drain erred in this analysis, however, on important points: 1) Judge Black applied the stay because of the indemnity provisions, not ownership of the claims[14]; 2) The order did not fully resolve any dispute; rather it advised that further pursuing the Foo-Refco dispute during the pendency of *In re LFG, LLC* would violate the stay; and 3) LFG took no subsequent efforts to deal with the Refco claims because they had already been settled.

The Foo Claimants were not enjoined and compelled to dismiss the state court action. Instead, they were advised that to proceed with the state court action prior to the end of the bankruptcy would be at their peril. Implicit in the order was that later on, the Foo Claimants could pursue Refco in the stayed state court action. An injunction would require a showing of irreparable harm and a balancing of the equities which did not occur in Judge Black's analysis.

Judge Drain also cited *In re Heghmann,* 316 B.R. 395, 400 (BAP 1st Cir. 2004) and *In re Yates,* 332 B.R. 1, 4 (BAP 10th Cir. 2005) for the proposition that "orders determining that the automatic stay have been violated and granting injunctive relief or sanctions are final orders." While that statement is true, it is not applicable here because Judge Black found no past violation of the stay nor granted any injunctive relief. Instead, Judge Black advised,

> ACCORDINGLY, any ***further*** proceedings by the respondents against Refco, and any pursuit of presently filed complaints in the Supreme Court of New York, will be in violation of the automatic stay and will place the debtor in a position to seek appropriate sanctions.

Trustee, Ex. L (emphasis added).

---

[14] *See, supra,* I. A.

Simply put, there is no finding that the stay was violated, or imposition of sanctions or injunctive relief.  Thus, Judge Black's decision is not entitled to finality for preclusion purposes.

By contrast *In re Heghmann,* and *In re Yates, supra,* had the indicia of finality:  in *Heghmann*, damages of $1,200 were ordered to be paid; and in *Yates*, property turnover and attorneys fees were entered as a judgment against the creditor.  These circumstances are quite different than the Foo Claimants being advised that further proceedings would violate the stay.

Additionally, the 2002 order was not appealable under 28 U.S.C. § 158 because it lacked finality.  Respondent bears the burden of proving that the 2002 was final in this *de novo* appeal with Seventh Circuit case law pre-dating the 2002 order.  The 2002 order did not dispose of any dispute among LFG, Refco or the Foo Claimants.  It was merely a procedural order to determine the timing of the dispute resolution.

Lastly, because Judge Black decided that this was not a core proceeding, but merely related to the bankruptcy, a final order could not have been entered against the Foo Claimants without their consent or *de novo* review by U.S. District Court for the Northern District of Illinois.  28 U.S.C. § 157(c)(1).

Inability to take an appeal from an order does prevent giving it preclusive effect, at least under some Second Circuit case law.  *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2nd Cir. 1986) *cert. den.* 480 U.S. 948 (1987)("inability to obtain appellate review, or the lack of such review once an appeal is taken, does prevent preclusion").

Thus, to hold the 2002 Order to be "final" for collateral estoppel purposes was erroneous on the part of the Bankruptcy Court in this matter.  Issue preclusion is not permitted unless the order is final.  *Gelb, supra.*

18

E.  OTHER PRINCIPLES ALSO MAKE PRECLUSION INAPPROPRIATE.

1.  Offensive non mutual collateral estoppel is inappropriate here.

As *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313,

329-30 (1971) notes, when a litigant who was not a party to the prior action seeks to use the

determination there to defeat the claim of one who was party to both actions, courts are more

reticent to apply preclusive effect.  In a bankruptcy proceeding, Appellants submit that the

Debtor sits in the plaintiff's chair and they sit in the defendants' chair because a properly filed

proof of claim shifts the burden shifts to the Trustee to disallow the claim.  Bankr. R. 3001(f).


2.  Laches also bars giving the 2002 order preclusive effect.

Judge Black's stay order was entered on August 8, 2002.  *In re LFG, LLC* remained open

until November 23, 2005.  At no time during the intervening three years did either LFG or any

Refco entity seek to compel the Foo Claimants to dismiss the state court litigation, although they

apparently had the right to do so pursuant to Judge Drain's analysis herein.  Had they done so,

litigation would have ensued to establish that neither the stay order nor the LFG-RGL settlement

bound the Foo Claimants on the Refco claims, and modification of the orders approving the

settlement and stay to clarify that point would have been made and/or appeal certainly would

have been taken.  LFG and Refco choose not to do so because of the tacit agreement that the

Foo-Refco dispute would be resolved at a later date.  Now that *In re LFG, LLC* is closed and is

non-appealable, laches bars Respondent from asserting a broader scope to the stay order because

the Foo Claimants can longer seek interpretation of those decisions.

II. THE FOO CLAIMS WERE NOT PROPERTY OF THE LFG ESTATE.

The Bankruptcy Court erred in alternatively holding that the Foo Claim was property of the LFG estate. Its conclusion was **_directly contrary_** to binding Second Circuit precedent in _In re Colonial,_ 980 F.2d 125 (2nd Cir. 1992). Judge Drain's conclusion, that LFG owned the Foo claims[15] against Refco, led the court to its clearly erroneous alternative analysis and holding.

The facts of _Colonial_ are similar to the Foo-Refco dispute. In _Colonial_, a creditor of the bankrupt debtors commenced a fraudulent conveyance action against third parties that had received the debtor's assets prior to bankruptcy. _Colonial_'s creditor was the FDIC (acting as receiver for several banks), and the third parties were one of the debtor's wife and son. The bankruptcy was venued in the District of Connecticut and the fraudulent conveyance action was brought in the U.S. District Court for the Southern District of Florida.

Like this litigation, when the bankruptcy Trustee learned of the fraudulent conveyance action, he sought to have the FDIC held in contempt of the automatic stay. Both the Bankruptcy Court and the Connecticut District Court on appeal held that the stay was violated because the fraudulent conveyance action was property of the estate.

As the case proceeded on appeal, the issues focused on why the automatic stay should apply against the FDIC. Was the fraudulent conveyance **_cause of action_** owned by the estate, and thus property of the estate? Alternatively, was the **_property_** sought by the fraudulent conveyance litigation property of the estate? Finally, even though neither the cause of action nor the property sought were property of the estate, did the stay still apply because the litigation was **_dependent on a claim against the debtor_**?

---

[15] The causes of action break out into two prongs. One prong traces the res of the Foo Accounts to establish Refco's liability and the other prong utilizes the acknowledged LFG debt to Foo to establish Refco's successor liability. DeLaurentis Decl. ¶ 36. The fraudulent conveyance cause of action has been specifically noticed. _Id._ at ¶ 44.

Just as Judge Drain did, both the *Colonial* Bankruptcy Court and the District Court on appeal held that the cause of action was estate property. *In re Colonial Realty Co.*, 1991 WL 487192 (D.Conn., 1991); *Matter of Colonial Realty Co.*, 134 B.R. 1017 (Bkrtcy.D.Conn. 1991).

Before the Second Circuit, the bankruptcy trustee abandoned the contention that the cause of action was owned by the estate. Rather, the bankruptcy trustee asserted that the property sought in the fraudulent conveyance action was property of the estate.

The Second Circuit rejected the contention that either the ***cause of action*** or ***the property sought*** in the fraudulent conveyance action was property of the estate. Rather, the Second Circuit adopted the reasoning of *In re Saunders,* 101 B.R. 303, 304-06 (Bankr. N.D. Fla. 1989) and disavowed its own prior related decisions on this point. *Saunders* also directly held that the fraudulent conveyance cause of action was owned by the creditor and not the debtor because it could not be asserted by the debtor outside of bankruptcy. *Id.*

The Second Circuit held that the automatic stay applied against the creditor, FDIC, on an alternative ground:

> [T]he Florida Action is . . . an "action ... to recover a claim against the debtor" within the meaning of § 362(a)(1). The Florida Action is therefore subject to the automatic stay . . .

*Id.* at 132.

Thus, the law of this Circuit is that a creditor's fraudulent conveyance claims are ***stayed*** by the bankruptcy filing but not ***owned*** by the bankrupt's estate[16]. The Seventh Circuit, where this matter was venued, concurs with the Second Circuit on this point. *Fisher v. Apostolou (In re*

---

[16] During the pendency of the bankruptcy proceeding, the trustee has the right and power to use the creditor's causes of action as if he/she were the creditor. 11 U.S.C. §§ 544, 548. Should a trustee elect to do so, and ***if*** the trustee prevails and ***actually recovers*** property, that property then becomes property of the estate. However, closing the case ends the trustee's office and the property of the estate. No part of this record demonstrates that the Respondent met its burden to show that the property of Foo's claims came back into the LFG estate.

The closure of the case must also, necessarily, end the right and power of the bankruptcy trustee to utilize the creditor's fraudulent conveyance causes of action against third parties. Closure of the case terminates the automatic stay and frees creditors to pursue third parties.

*Lake States Commodities, Inc.),* 155 F.3rd 876 (7th Cir. 1998).

Judge Drain clearly erred by reaching the conclusion that the Foo Claimants' causes of action were owned by the estate because *Colonial* requires the opposite result which *Fisher* equally supports.  *Cf.  In re Loral Space & Communications, Ltd.,* 53 Collier Bankr.Cas.2d 555, 2004 WL 2979785 (S.D.N.Y. 2004)(reversing Judge Drain on plain reading of statute).

This case now picks up where *Colonial, Saunders* and *Fisher* left off.  Now that the LFG automatic stay no longer restrains the Foo Claimants, and no demonstration has been made that LFG actually received property pursuant to Foo's claims, the Foo Claimants ought to be free to pursue Refco.  However, the Refco trustee erected two other bars before the Bankruptcy Court which went largely unaddressed below – the effects of the LFG-Refco and LFG-Foo releases.


III.  THE LFG-RGL RELEASE DOES NOT BAR THE FOO CLAIM AGAINST REFCO.

Judge Drain concluded that the LFG-RGL release bound the Foo Claimants because the Foo Claims were property of the LFG estate.  Bench Ruling, p. 5.  Given that *Colonial* requires a conclusion opposite the Bankruptcy Court's below, Appellants press their contention that the LFG-RGL settlement is not binding as to them.


A.  THE RELEASE FAILS TO BIND EITHER THE FOO CLAIMANTS OR THE RESPONDENT IN THIS CONTESTED MATTER.

Section 9 of the LFG-RGL release clearly states that ***the only parties*** bound by that settlement release are: 1) LFG and its successors/assigns; and 2) RGL, RGL affiliates, certain related individuals and the successors/assigns of these three groups[17].  Trustee Exhibit E, § 9.

---

[17] Although at first glance it may seem that Section 9 conflicts with Section 1 because the Section 1 appears to encompass creditors, the Section 1 phrase is importantly qualified and limited at its outset with "Except as otherwise

First, and most clearly, the Foo Claimants here are neither LFG, nor its successors/assigns who are bound by the release in Refco's favor.  Thus, the Foo Claimants are not bound by the settlement release because they are not a party to it.

This conclusion is further supported by the underlying decision.  Given that Judge Drain held it inappropriate to bind RGL to the Foo-LFG settlement (Bench Ruling, p. 12), Appellants reasonably infer he would also conclude it to be equally inappropriate to hold the Foo Claimants to the LFG-RGL settlement agreement given that they were not parties to it.

Second, Respondent's objection fails to establish that it was RGL's successor, assign or affiliate, discussed *infra* at VI.


### B.  EVEN IF THE RELEASE BOUND THE PARTIES, THIS CLAIM WAS CARVED OUT OF ITS APPLICATION.

Even assuming, *arguendo*, that the LFG-RGL settlement release applied to the Appellants, the Foo Claims were carved out of the release's scope.[18]   The cross reference to APA § 9.1 carves out release of the Proprietary Trading Business claims.[19]

The Foo claim arises from the carved out "Proprietary Trading Business" of the seller, LFG.

---

specifically set forth in this Agreement…"  Section 9 specifically set forth who was and was not bound by the LFG-RGL settlement.   Thus, the provisions are harmonized.

[18] SECTION 3.  Certain Obligations Not Affected.   Notwithstanding anything to the contrary contained in Sections 1 or 2 hereof, the Agreement shall not affect: . . . (iv) the obligations of LFG to indemnify and hold harmless Refco, its affiliates and others pursuant to Section 9.1 of the Asset Purchase Agreement with respect to any damages, liabilities and expenses (including, without limitation, attorneys' fees and any other legal costs or expenses) incurred by Refco after the date of this Agreement in any matters within the scope of Section 9.1 of the Asset Purchase Agreement, . . .

[19] (c) any claims against the Purchaser for debts, liabilities or obligations of the Seller not expressly assumed by the Purchaser under Section 2 hereof, including, without limitation, liability for taxes due as a result of the Transactions, the Proprietary Trading Business or any operating losses or claims arising prior to the Closing.
      Section 2 of the APA stated:  2.2  Retained Liabilities.  For the avoidance of doubt and without limiting the foregoing, the parties acknowledge that the following liabilities of the Seller shall be retained by the Seller: … (c) any obligations or liabilities relating to the Proprietary Trading Business of the Seller.

RGL was actually or constructively aware of the Foo Claim at the time it took over LFG's

operations in April, 2000. *See* APA Sch. 4.14 (no undisclosed liabilities); § 1.5 (Klemen, LFG

CEO, who settled the Foo 1999 trading accounting, consulting to RGL).

Judge Drain did not accept this logic. Rather, he opined generally about indemnification

provisions in settlement agreements. *Compare In re WestPoint Stevens, Inc.,* 333 B.R. 30

(S.D.N.Y. 2005)(reversing Judge Drain on plain reading of credit agreement). The fundamental

flaw is the opening qualification of ***this*** provision differentiating it from his generalized analysis:

> ***Notwithstanding anything to the contrary***, contained in Section 1 or 2 [release
> language] hereof, ***this Agreement shall not affect***:

Trustee Ex. E, § 3.

There is simply no plain reading of that phrase capable of being inclusive in nature as Judge

Drain characterized it. Clearly, no effect was given to these words. The term "notwithstanding

anything to the contrary" plainly signals that the itemized obligations are not released and are

carved out of the settlement[20].

Thus, the Foo Claim was intended to survive the LFG-RGL settlement[21].


C.  EVENTS SUBSEQUENT TO THE SETTLEMENT'S APPROVAL
     DEMONSTRATE ITS LACK OF BINDING EFFECT.

The LFG-RGL settlement agreement was tendered on May 30, 2002 and approved on

July 17, 2002. At no time did LFG, the LFG Trust, RGL or LLC seek to compel dismissal of the

Foo Claimants' state court action based upon the LFG-RGL settlement. Had they done so,

---

[20] Also of note is the paragraph heading:   Certain Obligations Not Affected. While it is true that the LFG-Refco
settlement, at par. 12, states that heading titles are for reference purposes only, it is equally true that the settlement's
authors intended to not have a global settlement – that certain Refco obligations were not released and certain LFG
obligations were not released. The settlement was ***not*** a general release.

[21] In the alternative, the Foo Claimants require discovery of the settlement drafts to clarify any ambiguity on this
point.

litigation would have ensued to establish that neither the LFG-RGL settlement nor the stay order bound the Foo Claimants on the Refco claims, and would have sought modification of the order approving the settlement to clarify that point. Dismissing the state court litigation was never sought because of the tacit agreement that the Foo-Refco dispute would be resolved at a later date. Now that the LFG-RGL settlement order is final, non-appealable and the case closed, laches bars LLC from asserting a broader scope to that settlement agreement. *See also, infra,* I. E. 2. (laches also barring preclusive effect of stay order).

Further, none of the underlying motion papers leading up to the August 2002 stay order asserted that the LFG-RGL settlement agreement precluded the Foo Claimants' Refco dispute. Neither LLC nor RGL took a position in the stay application. The entirety of LFG's basis for the stay was its indemnity obligation to RGL and not the preclusion of the Foo claims against Refco.

Thus, the absence of any attempt to dismiss the state court litigation of the Foo Claims against Refco because of the LFG-RGL settlement in the LFG bankruptcy demonstrates the absence of all parties' intention to have the settlement effect such a broad scope.

## IV.  THE LFG-FOO RELEASE DOES NOT PRECLUDE FOO'S REFCO CLAIM.

Respondent conceded at ¶ 39 of his objection that LLC was never intended to be released by the LFG-Foo settlement. Rather, the only beneficiaries of that settlement were: 1) LFG; 2) the LFG Trust; and 3) the LFG Trust's successors/assigns together with the beneficiaries of the LFG Trust, but limited to the beneficiaries' distribution rights.[22]  Trustee Ex. M, § 2.

---

[22] "[P]rovided, however, except as set forth in Sections 4 and 6 below, that nothing in this Agreement is intended to or does release or otherwise impair any claims, including claims that are derivative in nature, that the Foo Estate has or may have against any entities other than (a) the Debtor, the LFG Trust and the LFG Trust's successors and assigns and (b) the LFG Trust's beneficiaries, but solely on account of distributions that the beneficiaries have received or will receive from the LFG Trust."

Section 4 of the LFG-Foo release dealt with the litigation pending in January, 2003. Intentionally omitted from the list of mandated dismissals was *Lee v. Refco, LLC*, which had been filed in May, 2002 in Supreme Court, New York County and stayed pursuant to an August 2002 order in *In re LFG, LLC.*    Trustee Ex. J, L, M.

Section 6 of the LFG-Foo settlement dealt with that pending but stayed New York state court action against Refco, LLC.    Section 6 embodied the LFG-Foo understanding on Refco, that the Foo Claimants would wait for the end of the LFG bankruptcy before pursuing Refco. With the closure of the LFG bankruptcy in 2005, the Foo Claimants fulfilled that obligation.

The LFG-Foo Settlement was served on Refco, who made no objection to its terms at the time.  Refco's failure to object also demonstrates its own belief that the LFG-Refco settlement did not resolve the Foo-Refco dispute.  Refco was aware that the New York state court action against it had not been dismissed and failed to object then.  To permit them to essentially raise the same objection now through a successor bankruptcy trustee is wholly inequitable.[23]

Judge Drain saw no merit in the foregoing argument, an erroneous conclusion.  Rather than do as a court ought to do, which is to give effect, meaning and consistency to the intent and terms of contractual negotiations and ***presume*** that the parties are dealing in good faith[24], he concluded that these negotiations were "giving Foo ice in winter."  Bench Ruling, p. 12.  This conclusion unnecessarily impugns the integrity of all counsel involved and five years later, infers that Foo's counsel which included now U.S. Bankruptcy Court Judge Pamela Hollis and the author here permitted themselves to be bamboozled on a $1.4 million claim and/or that LFG's

---

[23] Although Appellants believe there is no ambiguity in the release provisions, a draft of the LFG-Foo settlement agreement demonstrates the intention that Refco was carved out as a beneficiary of the agreement. DeLaurentis Declaration, Ex. D at § 3 ("(4) the entry of an order in the Foo Estate's lawsuit against Refco, LLC, now pending before the Supreme Court of the State of New York [...] that either (a) dismisses the case without prejudice [...]").

[24] *E.g., In re Solutia, Inc.,* 2007 WL 1302609 (Bkrtcy. S.D.N.Y. 2007).

counsel actively tried to defraud Foo's counsel into believing they were negotiating for something of value. These negotiations were a central focus of the *In re LFG, LLC* litigation and were carefully considered by all counsel each step of the way. *Cf. In re WestPoint Stevens, Inc.,* 333 B.R. 30, 46-47 (S.D.N.Y. 2005)(reversing Judge Drain on plain reading of credit agreement where his construction impugned the legal skills of counsel negotiating the credit agreement).

Thus, Respondent finds no safe harbor in the LFG-Foo release.


V.   THE EXISTENCE OF LFG TRUST IS NOT A BAR HERE.

In the proceedings below, Respondent also asserted that the Foo Claimants are procedurally stayed by the LFG-Foo settlement agreement, pursuant to § 6 (Trustee, Ex. M), and Judge Black's August 7, 2002 order staying the state court litigation against Refco. Of course, a stay is of no concern to Refco. Refco is simply employing procedural devices to hinder and defeat a substantive claim that was properly brought.

As to Judge Black's order, that stay was dissolved with the closure of *In re LFG* on November 23, 2005. 11 U.S.C. §362(c)(2)(A).   This order presents no continuing hindrance.

As to the LFG-Foo settlement, Section 9 makes clear that Refco was excluded as a beneficiary of its terms and so, can not assert those terms here. Respondent LLC is asserting, *jus tertii,* LFG's rights which it lacks standing to do. The beneficiaries of the LFG-Foo settlement are solely the LFG Trust, the Foo Estate and their respective successors.

Additionally, to permit Respondent LLC to assert that the Foo Claim is stayed because the LFG Trust remains in existence is improper because of Refco's unclean hands (in equity) and attempting to benefit from the breach of its own contract with LFG (in law). The LFG Trust remains in existence solely because RGL breached its duties to the LFG Trust. *See* DeLaurentis

27

Declaration, Ex. E (LFG Liquidation Trust Response (Docket # 5099, Case No. 05-60006) noting RGL's failure to pay sums due pursuant to settlement).  Thus, allowing Respondent to assert the timing issue with its unclean hands is to permit it to benefit from its (or its alleged affiliate's) own breach.

Judge Drain concluded that Respondent could not be bound by the LFG-Foo settlement. Bench Ruling, p. 12.  Nonetheless, however, he permitted Respondent to receive a benefit of the settlement which extended the timing of when Foo could pursue Refco slightly beyond the automatic stay.  *Id.*  LFG never appeared in this contested matter to assert its rights.

This was error.  Either Respondent was party to the settlement because it was a party to the litigation and received notice of it, in which case it knew it was expressly carved out of the settlement's benefits.  Or, Respondent was not a party to the settlement and lacks standing to assert its terms here.  Under either analysis, Respondent can not utilize the LFG-Foo settlement.

## VI. BANKRUPTCY LAW DETERMINES THE DEFINITION OF "AFFILIATE."

### A.  THE BANKRUPTCY CODE DEFINITION OF AFFILIATE GOVERNS INTERPRETATION OF THE SETTLEMENT.

Judge Drain's order did not analyze why he concluded that LLC was an affiliate under the LFG-RGL settlement, but he held that it was.  Order, p.2.  This Court must establish the appropriate definition for "affiliate" as used in the LFG-RGL settlement agreement (Trustee Ex. E) because the agreement itself does not define the term.  Appellants assert that a written stipulation in a bankruptcy matter, executed as settlement of an adversary proceeding and approved by a bankruptcy judge looks solely to the Bankruptcy Code's definition of "affiliate" contained at 11 U.S.C. § 101(2) to determine its scope.

Bankruptcy law definitions must govern who is an "affiliate" of RGL because no other

body of law was utilized in the settlement.  Code departures ought to have been expressly put

forth in the settlement.  *Cf. In re First City Bancorporation of Texas, Inc.,* 1995 WL 710917

(Bkrtcy.N.D.Tex.1995) (itemizing affiliates in reorganization plan).

### B.  REFCO, LLC CAN NOT BE CONSIDERED AN RGL AFFILIATE UNDER THE BANKRUPTCY CODE.

Courts are required to interpret a statute such as 11 U.S.C. § 101(2)[25] according to its

plain meaning.  *E.g., U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242 (1989); *see In re*

*Loral Space & Communications, Ltd.,* 2004 WL 2979785 (S.D.N.Y. 2004)(reversing Judge

Drain on plain reading of statute).

The first provision applies to a debtor's parent ***entities*** while the second provision applies

to a debtor's subsidiary ***corporations.***  In applying this definition to these facts, RGL is assumed

to stand in the shoes of the "debtor."

Under the Bankruptcy Code, the term "affiliate" is an exclusive and limited definition.

*Matter of Missionary Baptist Foundation of America, Inc.,* 712 F.2d 206, 210 (5th Cir. 1983)("By

using the word "means" rather than "includes," Congress enacted a precise and restricted

definition"); *compare* 11 U.S.C. § 101(2) *with* 11 U.S.C. § 101(31).

The "affiliate" definition has been strictly interpreted.  *In re Maruki USA Co., Inc.,* 97

B.R. 166 (Bkrtcy.S.D.N.Y. 1988); *accord Matter of Sporting Club at Illinois Center,* 132 B.R.

792 (Bkrtcy. N.D. Ga. 1991).  *Maruki* held that a limited partnership could not be a corporation

---

[25] (2) The term "affiliate" **means—**
  (A) **entity** that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, […]
  (B) **corporation** 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, […]
11 U.S.C. § 101(2)(B)(emphasis added).

under the Code; Congress knew the differences among business entities and chose to limit a subsidiary's affiliation status to corporations.

*Maruki* indicates that the Respondent LLC Trustee can not now claim that a limited liability company may be considered a corporation as defined in 11 U.S.C. §101(9).  Indeed, this Court would be the very first to the extent of the Foo Claimants' research to hold that a limited liability company was a corporation under the Code[26].  To do so violates the plain meaning rule because a corporation is also a defined term in the Code.  Congress intentionally limited subsidiary affiliations to corporations but permitted greater latitude with a debtor's parent entities.  *Compare* 11 U.S.C. §101(2)(A) *with* 11 U.S.C. §101(2)(B) (entity v. corporation).

Additionally, the plain meaning of 11 U.S.C. §101(2)(B) limits an affiliate to not more than two levels removed from the primary entity.  There are no cases holding that a third level entity is an "affiliate" under the Code.  Respondent can not stretch the definition to include as an affiliate the subsidiary of the subsidiary of the subsidiary of RGL.

WHEREFORE, the Foo Claimants respectfully request that the Bankruptcy Court be reversed, the Debtor's objection be denied, and an order entered here remanding the matter for discovery and a trial on the merits of the Claim together with such other and further relief as this Court deems appropriate.

Dated:  August 6, 2007
        New York, New York

                                    _____/S/_____
                                    Brian M. DeLaurentis (BD 4995)
                                    Brian M. DeLaurentis, P.C.
                                    36 W. 44th St., Suite 610
                                    New York, NY 10036
                                    212-354-6300

---

[26] It is true, however, that LLC's have been held to be "persons" or "entities," none have ever been held to be a "corporation."  *See In re Giampietro*, 317 B.R. 841 (Bkrtcy.D.Nev. 2004).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In re:

REFCO, LLC,                                                    Case No. 1:07-cv-06599-PAC

          Debtor.

_____

## <u>DECLARATION OF SERVICE BY FIRST CLASS MAIL</u>

BRIAN M. DELAURENTIS, being duly sworn, deposes and states:

1.   I am the attorney for Appellant in this action, and am duly admitted to practice in the courts of the U.S. District Court for the Southern District of New York.

2.   I am not a party herein, am over 18 years of age.

3. On August 7, 2007, I served a copy of the Appellant's Memorandum of Law upon counsel for the parties at the address designed by them for such purposes:

|  |  |
|---|---|
| Scott E. Ratner, Esq. | Andrew Velez-Rivera, Esq. |
| Togut, Segal & Segal, LLP | U. S. Trustee |
| 1 Penn Plaza | 33 Whitehall St. |
| New York, NY 10119 | New York, NY 10004 |

Vincent E. Lazar, Esq.
Melissa M. Hinds, Esq.
Jenner & Block, LLP
330 N. Wabash Ave.
Chicago, IL 60611

4. Said service was made by depositing a true copy of said documents enclosed in a prepaid, sealed wrapper, properly addressed to the above-named party, in an official depository under the exclusive care and custody of the United States Post Office.

5.   I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

31

Dated:  August 7, 2007
         New York, New York


                                    _____/S/_____
                                    BRIAN M. DELAURENTIS