UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
                                                               :
In re:                                                         :    Chapter 7
                                                               :
REFCO, LLC,                                                    :    Case No. 05-60134 (RDD)
                                                               :
                              Debtor.                          :
                                                               :
--------------------------------------------------------------X
                                                               :
MARY LOU LEE, SAMATHA FOO, JASON FOO,                          :
FOO, LLC AND ESTATE OF CHIH MIN FOO,                           :
                                                               :
                              Appellants,                      :
                                                               :    Case No. 07-CV-06599 (PAC)
v.                                                             :
                                                               :
REFCO, LLC,                                                    :
                                                               :
                              Appellee.                        :
--------------------------------------------------------------X

## BRIEF OF APPELLEE

JENNER & BLOCK LLP
Special Commodities Bankruptcy Counsel
for Albert Togut, Chapter 7 Trustee of
Refco, LLC
330 N. Wabash Avenue
Chicago, Illinois 60611
(312) 222-9350
Vincent E. Lazar (*pro hac vice* pending)
Jerry L. Switzer, Jr. (*pro hac vice* pending)

-and-

TOGUT, SEGAL & SEGAL LLP
General Bankruptcy Counsel
for Albert Togut, Chapter 7 Trustee of
Refco, LLC
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT 9759)
Scott E. Ratner (SR 0015)

August 22, 2007

## TABLE OF CONTENTS

**Page No.**

STANDARD OF REVIEW ............................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

A.   Foo's Relationship with LFG.................................................................................. 2

B.   The Sale of LFG's Assets to Refco........................................................................ 4

C.   LFG's Chapter 11 Case........................................................................................... 5

D.   The Foo Estate's Suit Against Refco in 2002......................................................... 7

E.   The Foo-LFG Settlement. ....................................................................................... 8

F.   The Foo Claim Against Refco's Estate.................................................................... 9

SUMMARY OF ARGUMENT .................................................................................... 12

ARGUMENT ................................................................................................................ 13

I.    The Stay Order Conclusively Determined that the Foo Estate's Claims Against Refco are
      Property of the LFG Estate. ................................................................................... 13

      A.   The Stay Order Decided Whether the Foo Estate's Claims Against Refco are Property
           of the LFG Estate.......................................................................................... 13

      B.   LFG and the Foo Estate Actually Litigated Whether the Foo Estate's Claims Against
           Refco are Property of the LFG Estate............................................................ 15

      C.   A Finding that the Foo Estate's Claims Against Refco are the LFG Estate's Property
           Was Necessary to Support the Stay Order...................................................... 15

      D.   The Foo Estate Had a Full and Fair Opportunity to Litigate the Issue Before the LFG
           Court. ............................................................................................................. 17

II.   Creditors' Derivative Claims are Property of the Debtor's Estate. ..................... 19

III.  The LFG Claims Against Refco Were Compromised and Released, and Have Not Been
      Abandoned to Creditors. ........................................................................................ 23

      A.   The LFG Claims Against Refco Were Released. ........................................... 23

      B.   The LFG-Refco Settlement Did Not Exclude the Claims the Foo Estate Purports to
           Assert Against Refco. .................................................................................... 24

      C.   Even if Not Settled, the Claims the Foo Estate Purports to Assert Against Refco Would
           Still Be Property of the LFG Trust. ............................................................... 26

IV.  The Foo Estate's Successor Liability Claims Plainly Fail on the Merits. ........... 26

V.   The Foo Estate Failed to Properly Plead or Preserve Any New Claims............... 27

CONCLUSION................................................................................................................ 29

# TABLE OF AUTHORITIES

## Cases

*ACEquip Ltd. v. American Eng'g Corp.*, 315 F.3d 151 (2d Cir. 2003) ........................................ 27

*Bauer v. Commerce Union Bank*, 859 F.2d 438 (6th Cir. 1988) .................................................. 22

*Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41 (2d Cir. 2003) .............................................. 27

*Conley v. Gibson*, 355 U.S. 416 (1957) .............................................................................. 1

*Fisher v. Apostolou (In re Lake States Commodities, Inc.)*, 155 F.3d 876 (7th Cir. 1998) .... 16, 23

*Goldman, Sachs & Co. v. Esso Virgin Islands, Inc. (In re Duplan Corp.)*, 212 F.3d 144 (2d Cir. 2000) ............................................................................................................................. 1

*In re 20/20 Sport, Inc.*, 200 B.R. 972 (Bankr. S.D.N.Y. 1996) ................................................. 1

*In re 48th St. Steakhouse, Inc.*, 835 F.2d 427 (2d Cir. 1987) .................................................. 18

*In re Adelphia Commc'ns Corp.*, 325 B.R. 89 (Bankr. S.D.N.Y. 2005) ...................................... 28

*In re AM Int'l, Inc.*, 67 B.R. 79 (Bankr. N.D. Ill. 1986) ......................................................... 28

*In re Calpine Corp.*, 354 B.R. 45 (Bankr. S.D.N.Y. 2007) ...................................................... 16

*In re Chateaugay Corp.*, 156 B.R. 391 (S.D.N.Y. 1993) ......................................................... 29

*In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992) .......................................................... 22

*In re Drexel Burnham Lambert Group, Inc.*, 159 B.R. 420 (S.D.N.Y. 1993) .............................. 28

*In re First Central Fin. Corp.*, 377 F.3d 209 (2d Cir. 2004) .................................................... 28

*In re GGSI Liquidation, Inc.*, 351 B.R. 529 (Bankr. N.D. Ill. 2006) .......................................... 29

*In re Guidry*, 321 B.R. 712 (Bankr. N.D. Ill. 2005) ............................................................... 1

*In re H. King & Assocs.*, 295 B.R. 246 (Bankr. N.D. Ill. 2003) ................................................ 21

*In re Heath*, 331 B.R. 424 (9th Cir. BAP 2005) .................................................................... 1

*In re Heghman*, 316 B.R. 395 (1st Cir. BAP 2004) ................................................................ 17

*In re Ionosphere Clubs, Inc.*, 17 F.3d 600 (2d Cir. 1994) ....................................................... 21

*In re Jones*, No. 06-10105, 2007 WL 1651845 (1st Cir. BAP June 8, 2007) .............................. 17

*In re Madison*, 249 B.R. 751 (Bankr. N.D. Ill. 2000) ............................................................ 18

*In re Nat'l Century Fin. Enters., Inc.*, 423 F.3d 567 (6th Cir. 2005) ........................................ 18

*In re OODC, LLC*, 321 B.R. 128  (Bankr. D. De. 2005) .......................................................... 21

*In re PCH Assocs.*, 949 F.2d 585 (2d Cir. 1991) .................................................................. 13

*In re Perrin*, 361 B.R. 853 (6th Cir. BAP 2007) .............................................................. 17, 18

*In re PVI Assocs.*, No. 93-15543, 1995 WL 20421 (E.D. Pa. Jan. 13, 1995) .............................. 18

*In re Reichmann Petroleum Corp.*, No. 06-60843, 2007 WL 869719 (Bankr. E.D. Tex. Mar. 19, 2007) .......................................................................................................................... 24

*In re Stinson*, 221 B.R. 726 (Bankr. E.D. Mich. 1988) .......................................................... 22

*In re Sunrise Securities*, 916 F. 2d 874 (3d Cir. 1990) .......................................................... 20

*In re Yates*, 332 B.R. 1 (10th Cir. BAP 2005) ..................................................................... 17

*Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130 (2d Cir. 1993) .............................. 19, 20

*Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339 (7th Cir. 1987) .......... 20

*Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219 (2d Cir. 2006) .................................... 28

*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1 (1984) ............................... 13

*Nortex Trading Corp. v. Newfield*, 311 F.2d 163, 164 (2d Cir. 1962)...........................................1

*Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991) ...........................19, 20

*Solow v. Stone*, 994 F. Supp. 173 (S.D.N.Y. 1998) ......................................................................20

*Spillyards v. Abboud*, 278 Ill. App. 3d 663, 662 N.E.2d 1358 (1st Dist. 1996) ..........................21

*St. Paul Fire & Marine Insur. Co. v. PepsiCo, Inc.*, 884 F.2d 688 (2d Cir. 1989).......................21

*Sweet v. Sheahan*, 235 F.3d 80 (2d Cir. 2000)................................................................................1

*United States v. United States Gypsum Corp.*, 333 U.S. 364 (1948)...............................................1

## Statutes & Regulations

11 U.S.C. § 101(49) ........................................................................................................................24

11 U.S.C. § 101(9)(A) .....................................................................................................................24

11 U.S.C. § 105(a) ...........................................................................................................................16

11 U.S.C. § 362 ................................................................................................................................15

11 U.S.C. § 554(d) ...........................................................................................................................26

17 C.F.R. §§1.1-190.10......................................................................................................................2

28 U.S.C. § 1334 ..............................................................................................................................19

28 U.S.C. § 157 ................................................................................................................................19

7 U.S.C. § 1 *et, seq.*...........................................................................................................................2

## Rules

Fed. R. Bankr. P. 8013.......................................................................................................................1

Fed. R. Civ. P. 12(b)(6).....................................................................................................................1

## STANDARD OF REVIEW

This Court is to review the Bankruptcy Court's findings of fact applying the "clearly erroneous" standard and conclusions of law applying *de novo* review.  *See* Fed. R. Bankr. P. 8013; *Goldman, Sachs & Co. v. Esso Virgin Islands, Inc. (In re Duplan Corp.)*, 212 F.3d 144, 151 (2d Cir. 2000) ("The Bankruptcy Court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*.")  A determination that a particular finding is "clearly erroneous" means the reviewing court is left with the definite and firm conviction that a mistake has been made.  *United States v. United States Gypsum Corp.*, 333 U.S. 364, 395 (1948).

A trustee's objection to a proof of claim is subject to the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See In re Heath*, 331 B.R. 424, 435 (9th Cir. BAP 2005) ("If [creditors'] proofs of claim are analogized to complaints — as is commonly done — then the debtors' objections are like motions to dismiss for failure to state a claim on which relief can be granted.") (quoting *In re Guidry*, 321 B.R. 712, 715 (Bankr. N.D. Ill. 2005); *see also Nortex Trading Corp. v. Newfield*, 311 F.2d 163, 164 (2d Cir. 1962) (analogizing proofs of claim to complaints); *In re 20/20 Sport, Inc.*, 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) (same).  Accordingly, the Bankruptcy Court's decision to disallow and expunge the Foo Claim was correct if "it appears beyond doubt that the [Foo Estate] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957); *accord Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

## STATEMENT OF FACTS

A.     Foo's Relationship with LFG.

Chi Min "Dennis" Foo ("Foo") was a floor broker[1] and member of LFG, LLC ("LFG"), a futures commission merchant ("FCM") whose assets were acquired by Refco Group, Ltd. ("RGL") in April 2000 and thereafter contributed in part to Refco, LLC ("Refco" or the "Appellee").  (*See infra* at pp. 1-4.)

In August 1995, Foo and LFG entered into an Investment Agreement (Exhibit A to the Chapter 7 Trustee's Objection to the Claim of the Estate of Chi Min Foo (the "Objection" or "Obj.," Bankr. Doc. No. 704)), pursuant to which Foo became a member of LFG and agreed to contribute $1,000 as initial capital.  (Obj. Exh. A. at Art. 3.1.)  In accordance with the Investment Agreement, LFG opened proprietary commodity trading accounts (the "LFG/Foo Trading Accounts") in its own name, into which it deposited funds to be used for commodities trading, and over which LFG gave Foo trading authority.  (Obj. Exh. B. at ¶¶ 19-24; Affidavit of John F. Belom in Support of Motion to Show Cause (the "Belom Affidavit," attachment to Obj. Exh. N) at ¶ 4.)  Foo's sole compensation from LFG was an annual payment based on a contractual share of the profits earned in the LFG/Foo Trading Accounts.  (Obj. Exh. A at Art. 3.2.)  At the end of

---

[1] Appellants' Brief confuses and misdefines the concepts of "floor trader," "floor broker" and "proprietary account," and uses that confusion to reach factual and legal conclusions unsupported by the record (the term "proprietary floor trader" used in the Appellants' Brief (*see* Appellants' Br. at p. 1) does not exist in the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1, *et seq.*, or the Commodity Futures Trading Commission ("CFTC") regulations promulgated thereunder at 17 C.F.R. §§1.1-190.10.  A "floor broker" is "any person who, in or surrounding any pit, ring post or other place provided by a contract market for the meeting of persons similarly engaged, shall purchase or sell *for any other person* any commodity for future delivery," while a "floor trader" purchases or sells commodity contracts "solely for such person's own account."  *Compare* 17 C.F.R. § 1.3(n) (emphasis added) *with* 17 C.F.R. § 1.3(x).  Further, contrary to the description in footnote 1 of Appellants' Brief, a "proprietary account" is an account "carried on the books and records of an individual, a partnership, corporation or other type association" for its own account or for the account of certain affiliates.  *See* 17 C.F.R. § 1.3(y).  Here, the record is clear that the accounts in question were both carried on LFG's books and records and owned by LFG.  (*See* Obj. Exh. B at ¶¶ 21-25; Exh. N. at p 3.)  Therefore, Foo was a floor broker, not a floor trader, and he was trading LFG's proprietary account, not his own account.  Moreover, notwithstanding the fanciful description in Appellants' Brief of how trades are cleared (*see* Appellants' Br. at p. 2), there is no evidence in the record below that Foo "cleared" any personal trades through LFG, or that he even maintained a personal account at LFG.

each calendar year, LFG credited Foo's share of the profits to Foo's capital account at LFG (the "Capital Account").  (*Id.* at Arts. 2.1 & 3.2.)

Foo had no ownership interest in the LFG/Foo Trading Accounts.  The LFG/Foo Trading Accounts were owned by LFG, carried LFG's tax identification number, and were cross-margined with other LFG-owned accounts.  (Obj. Exh. B at ¶¶ 21-25; Obj. Exh. N at p. 3.)

In 1998, Foo entered into a Member Trader Agreement with LFG (Exhibit C to the Objection), pursuant to which Foo agreed to contribute an additional $350,000 in capital as security for 50 percent of any trading losses in the LFG/Foo Trading Accounts.  In return, LFG increased Foo's share of the profits derived from trading activities in the LFG/Foo Trading Accounts to 80 percent.  (Obj. Exh. C at ¶ B.)

Foo asserted that, at the end of calendar year 1999, his share of the trading profits totaled $2,737,910.07 (the "1999 Trading Profits").  (Obj. Exh. G).  As a result of financial difficulties, LFG did not pay such amounts to Foo.  (Obj. Exh. B at ¶¶ 19, 37.)

In December 1999, LFG organized a new subsidiary limited liability company entitled "Foo, LLC."  (Obj. Exh. B at ¶¶ 30-32.)  In January 2000, in order to, among other things, facilitate a potential eventual transfer of open positions in LFG proprietary accounts to individual floor brokers, LFG transferred all positions in its proprietary accounts, including the LFG/Foo Trading Accounts, to new proprietary accounts opened in the name of LFG subsidiaries.  (*Id.* at ¶¶ 30-34.)  In particular, LFG transferred the positions in the LFG/Foo Trading Accounts to new accounts opened in the name of Foo, LLC.   (*Id.* at ¶ 34.)  LFG held a 100 percent ownership interest in Foo, LLC, and thus in the new accounts opened in Foo, LLC's name (the "FLLC Trading Accounts").  (Obj. Exh. B at ¶ 32-35; Belom Aff. at ¶ 14.)  As with the LFG/Foo

Trading Accounts, Foo had no ownership interest in the FLLC Trading Accounts. (Obj. Exh. B at ¶¶ 32-35; Exh. N at p.3; Belom Aff. at ¶¶ 12-14.)

Following the transfer of the open trade positions from the LFG/Foo Trading Accounts to the FLLC Trading Accounts, Foo continued trading the accounts for the benefit of LFG's subsidiary, Foo, LLC. (Obj. at ¶ 22; Belom Aff at ¶¶ 12-14.)

B.     The Sale of LFG's Assets to Refco.

On April 5, 2000, LFG and RGL entered into an Agreement for Purchase and Sale of Assets (the "Asset Purchase Agreement" or "APA," attached as Exhibit D to the Objection). Pursuant to the APA, RGL purchased the majority of LFG's business assets (the "LFG Asset Sale"). The APA expressly excluded the acquisition of any LFG proprietary trading assets, including the FLLC Trading Accounts, and expressly provided that RGL did not assume any liabilities of LFG, including any liability relating to propriety trading assets. (Obj. Exh. D at § 1.2.)[2] Refco was not a party to the APA (although RGL thereafter contributed certain of the FCM-related assets acquired by RGL under the APA to Refco). (Obj. at ¶ 23.)

In connection with the LFG Asset Sale, LFG transferred all proprietary account positions previously cleared by LFG, including the positions recorded in the FLLC Trading Accounts, to an "omnibus" account opened by LFG at Refco. (Belom Aff. at ¶ 14.) Foo still had no

---

[2] Appellants' Brief takes great liberties with the facts surrounding the LFG Asset Sale, including assertions unsupported by the record below of a "hostile" takeover by Refco (Appellants' Br. at pp. 2-3), and assertions that LFG transferred all of its assets to RGL and RGL's affiliates. (Appellants' Br. at pp. 3-4.) The Foo Estate bases the latter allegations largely on a selective quotation from the deposition of LFG's CEO Edwin Buchanan, which was refuted by substantial other evidence in LFG's chapter 11 case. (See, e.g., Belom Aff. at ¶ 8-10 ("The reliance of Foo … on the testimony of Mr. Buchanan is misguided and misleading…. In short, Mr. Buchanan had, and has, no personal knowledge of the terms of the asset purchase by Refco or how it was affected…. The fact that Refco did not take all of LFG's assets has been known to Foo ... since at least July 17, 2001 when I testified in connection with the motion to convert the case to Chapter 7.").) However, even if the Foo Estate's allegations that RGL acquired all of LFG's assets are taken as true, the transaction still was an asset sale and under applicable law Refco did not succeed to LFG's liabilities. (See infra Section IV.)

ownership or other interest in Foo, LLC, the FLLC Trading Accounts, or the positions maintained in LFG's omnibus account at Refco. (*Id.* at ¶¶ 12-14.)

On June 27 and 28, 2000, LFG transferred its ownership interest in Foo, LLC to Foo. Simultaneously, at Foo's request, LFG transferred all open trading positions and other assets associated with the FLLC Trading Accounts from the LFG omnibus account at Refco to another FCM, Geldermann, Inc. ("Geldermann"). (Obj. Exh. B at ¶ 35.) As a result, on and after June 28, 2000, Foo had control over Foo, LLC and the trading positions associated with the FLLC Trading Accounts, as well as any trading profits in the FLLC Trading Accounts earned after January 1, 2000. (*See* Belom Aff. at ¶ 12.)

C.     LFG's Chapter 11 Case.

On April 9, 2001 (the "LFG Petition Date"), LFG filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Northern District of Illinois (the "LFG Court"), docketed as Case No. 01-12604 (the "LFG Case") (Obj. Exh. F at ¶ 1.)

Prior to the LFG Petition Date, Joy Ju, another former proprietary account trader at LFG, asserted a $22 million breach of contract claim against LFG, RGL, and others in a National Futures Association arbitration proceeding (the "Ju Arbitration"). (*Id.* at ¶ 2.) Ju alleged that the LFG Asset Sale to RGL defrauded LFG's creditors, that the LFG Asset Sale left LFG with insufficient assets to meet its obligations to its creditors, and that RGL was the alter ego of, and the successor in interest to, LFG. (*Id.*) After the Ju Arbitration was stayed by virtue of LFG's bankruptcy filing, Ju filed a proof of claim in the LFG Case re-asserting these claims against LFG. (Obj. at ¶ 29.) Ju eventually released all of his claims against both LFG and RGL pursuant to a settlement agreement approved by the LFG Court on February 24, 2003. (*Id.)*

Before the Ju claims were settled, RGL filed a proof of claim (the "RGL Claim") against LFG seeking indemnification for the attorneys' fees incurred in defending against the Ju Arbitration, and also withheld payments to LFG related to the LFG Asset Sale and the transfer of LFG's assets.  (Obj. Exh. F at ¶ 6.)  LFG objected to the RGL Claim and initiated an adversary proceeding against RGL (the "LFG-RGL Adversary") seeking, among other things, to avoid allegedly fraudulent transfers made by LFG to RGL in connection with the LFG Asset Sale. (Obj. Exh. F at ¶¶ 7-8.)

On May 30, 2002, LFG and RGL entered a settlement agreement (the "LFG-Refco Settlement," attached as Exhibit E to the Objection) resolving the disputes underlying the RGL Claim and the LFG-RGL Adversary, including the fraudulent transfer claims.  The LFG-Refco Settlement included a broad release of claims against RGL and its affiliates, as follows:

> LFG, as debtor and debtor-in-possession, for and on behalf of itself and the estate created upon the commencement of the Case, and for and behalf of all its creditors for whom it acts in a representative capacity pursuant to the provisions of the Code (and for each of their respective heirs, successors, and assigns), does hereby release, acquit and forever discharge Refco of and from any and all claims, counterclaims, defenses, demands, liens, agreements, contracts, covenants, suits, actions, causes of actions, obligations, controversies, debts, compensation, losses, costs, expenses, attorneys' fees, damages, judgments, order and liabilities of whatever kind or nature in law, equity or otherwise . . . whether now asserted or unasserted, known or unknown, contingent or vested, which have existed or my exist, or which do exist as of the date hereof, or which may in the future arise on account of, in any way relating to, or arising in connection with: (i) the [LFG-RGL Adversary]; (ii) the Asset Purchase Agreement (and any amendment or supplements thereto), except as otherwise specifically set forth in this Agreement; (iii) the sale and transfer of assets by LFG to Refco in connection with the Asset Purchase Agreement; or (iv) any assignment, subrogation or other transfer of rights by agreement, operation of law or otherwise by any person or entity to LFG of claims, judgments or any other rights whatsoever against Refco relating to the matters referred to in clauses (i), (ii) and (iii) of this Section 1 . . .

(Obj. Exh. E at § 1.)  For purposes of the LFG-Refco Settlement, "Refco" was defined as "Refco Group Ltd., LLC … *and its affiliates* and each of their former and current directors, managers,

officers, employees, attorneys and other consultants and each of their respective heirs, legal representatives, successors and assigns." (Obj. Exh. E at p. 1 (emphasis added).)

LFG served a copy of the motion to approve the LFG-Refco Settlement, which included the LFG-Refco Settlement as an attachment, on the attorneys for Foo and the Foo Estate. (Obj. Exh. F.) No parties (including the Foo Estate) objected to the LFG-Refco Settlement, and the LFG Court approved the LFG-Refco Settlement by entry of an order on July 17, 2002 (the "LFG-Refco Settlement Order"). (Obj. at ¶ 33.)

D.    The Foo Estate's Suit Against Refco in 2002.

On May 30, 2002, the date that the motion to approve the LFG-Refco Settlement was filed, the Foo Estate filed a complaint against Refco in the Supreme Court of the State of New York (the "New York Litigation"), alleging that Refco had breached its fiduciary obligations to Foo and violated section 4d(a)(2) of the CEA with respect to the FLLC Trading Accounts transferred by LFG to Refco.[3] (Complaint at ¶¶ 28-38, attached as Exhibit J to the Objection.) The complaint also alleged that "[d]uring 2000, Refco acquired virtually all of the assets and liabilities of LFG related to commodities trading activities," apparently attempting to assert a successor liability claim. (*Id.* at ¶ 28.) The Foo Estate sought a judgment of $2,738,000 against Refco, the same amount as the Foo LFG Claim. (*See id.* at ¶ 38.)

In response to the filing of the New York Litigation, LFG filed in the LFG Case a "Motion for Rule to Show Cause for Violation of 11 U.S.C. § 362(a)" (the "Stay Motion" attached as Exhibit K to the Objection). LFG argued that because it was the customer that held the omnibus account at Refco, any causes of action for Refco's alleged breach of fiduciary

---

[3] Appellants' counsel asserts that the timing of his commencement of the New York Litigation was a mere coincidence. (Appellants' Br. at p. 5.) However, the record is clear that Appellants' counsel filed the New York Litigation and a second lawsuit against Refco on the same date, that counsel was actively opposing confirmation of LFG's plan of liquidation, and that counsel asserted in a pleading related thereto that his lawsuits would delay consummation of LFG's plan. (*See* Obj. Exh. K at ¶ 14.)

obligations or alleged violations of the CEA were property of the LFG estate, not the Foo Estate. (Obj. Exh. K at ¶¶ 12-15; *see also* Debtor's Reply in Support of its Motion for Rule to Show Cause for Violation of 11 U.S.C. Section 362(a) (the "Stay Reply," attached as Exhibit N to the Objection) at pp. 2-3.)  LFG also argued the successor liability claims asserted by the Foo Estate against Refco were property of the LFG Estate.  (Obj. Exh. K at ¶ 15; Obj. Exh. N at pp. 6-8.)

On August 8, 2002, the LFG Court entered an order (the "Stay Order" attached as Exhibit L to the Objection), expressly finding that the Foo Estate's complaint in the New York Litigation "attempt[s] to assert causes of action that are properly held by the debtor, and as such are attempts to control the debtor's property prohibited by the automatic stay provision of § 362 of the Bankruptcy Code."  The Foo Estate did not file an appeal, so the Stay Order became a final order.  (*See* June 6, 2007 Bench Ruling (the "Bench Ruling," attached as Exhibit A to Order Sustaining Chapter 7 Trustee's Objection to the Claim of the Estate of Chi Min Foo, Bankr. Doc. No. 791) at p. 6.)

    E.    The Foo-LFG Settlement.

Before he died, Foo filed a proof of claim in the LFG Case in the amount of $2,737,910.07 (the "Foo LFG Claim," attached as Exhibit G to the Objection).  The stated basis for the Foo LFG Claim was Foo's share of the 1999 Trading Profits.  (Obj. Exh. B at ¶¶ 19, 37.)

The Foo Estate subsequently alleged that Foo was a customer of LFG, not a floor broker trading an LFG account, and Foo's share therefore constituted customer property under section 766 of the Bankruptcy Code, on account of which he was entitled to a priority customer "net equity" claim.  (Obj. Exh. H at ¶¶ 4-8.)  LFG objected to the Foo LFG Claim, contending that Foo's share of LFG's profits constituted the undistributed return on Foo's membership interest in LFG, *i.e.* equity.  (*Id*. at ¶ 9.)  Although the LFG Court never explicitly decided whether Foo held a debt claim against or equity interest in LFG, it did hold that Foo was never a customer of

LFG.  (*See* "Order Denying Dennis Foo's Motion Convert Case to One Under Chapter 7 of the Bankruptcy Code" (attached as Exhibit I to the Objection) at ¶¶ C-D.)

On January 9, 2003, the Foo Estate and John F. Belom, as Trustee of the LFG Liquidation Trust (the "LFG Trust"),[4] reached a global settlement concerning the Foo LFG Claim (the "Foo-LFG Settlement," attached as Exhibit M to the Objection).  The Foo LFG Claim was allowed as a general unsecured claim in the amount of $1.5 million.  (Obj. Exh. M at § 4.) The Foo Estate also specifically acknowledged and agreed that the Stay Order, which found that section 362 stayed all of the Foo Estate's claims against Refco, "remains and will remain in full force and effect until the dissolution of the LFG Trust, pursuant to 11 U.S.C. § 362(c)."  (*Id.* at § 6.)  Finally, the Foo Estate agreed that it would not assert or prosecute any claim or cause of action against third parties with a right of offset against the LFG Trust, such as RGL and Refco, until the LFG Trust is dissolved by order of the LFG Court.  (*Id.*)  The Foo-LFG Settlement was approved by order of the LFG Court dated January 29, 2003.

F.    The Foo Claim Against Refco's Estate.

On July 14, 2006, the Foo Estate filed Proof of Claim No. 547 (the "Foo Claim") against Refco in the amount of $1,477,910, which is alleged to be the balance of Foo's share of the 1999 Trading Profits earned through Foo's Member Trader Agreement with LFG.  (Declaration of Brian DeLaurentis (the "First DeLaurentis Declaration," attachment to the Foo Claim) at ¶¶ 2, 10.)  In particular, the Foo Estate asserts that LFG owed Foo $2,727,910.07 (the same amount as the original Foo LFG Claim), and that it has received approximately $1,200,000 from the LFG Trust.  (*Id.*)

---

[4] The LFG Trust is a trust created pursuant to the "Debtor's and Creditors' Committee's Amended Joint Plan of Liquidation" (the "LFG Plan"), which was confirmed by order of the LFG Court on September 18, 2002.  (Obj. Exh. H at ¶ 2.)  Pursuant to the terms of the LFG Plan, the LFG Trust, of which John Belom is both liquidating agent and trustee, succeeded to all of LFG's rights, title and interest in any and all of LFG's assets, including LFG's right to pursue and compromise claim disputes and bankruptcy actions.  (*Id.*)

The sole basis identified in the Foo Claim for any liability on the part of Refco is the Foo Estate's contention that "contrary to a written agreement between Refco and LFG, Refco in fact assumed all LFG's liabilities when it acquired LFG on April 28, 2000. Thus, Debtor herein assumed liability for Creditor's claims against LFG." (First DeLaurentis Declaration at ¶¶ 8-9.) The only fact cited by the Foo Estate in support of this proposition is a bald allegation that "deposition evidence" from the LFG Case and the LFG-RGL Adversary established that Refco assumed LFG's liabilities. (*Id.* at ¶ 8.)

On April 3, 2007, the Trustee objected to the Foo Claim on three grounds: (1) neither Refco nor RGL has any successor liability for any debts of LFG, including debts owed to Foo or the Foo Estate, either as a matter of contract or common law; (2) the claims asserted by the Foo Estate in the Foo Claim were property of LFG's bankruptcy estate and, moreover, those claims were settled and released by LFG pursuant to the LFG-Refco Settlement; and (3) the Foo Estate is stayed from asserting any claims against Refco until the LFG Trust is dissolved. (Obj. at ¶¶ 55-92.)

The Foo Estate filed its Memorandum of Law in Response to Trustee Objection on May 28, 2007 (the "Response," Bankr. Doc. No. 757), in which it argued that the Foo Claim is not barred by issue preclusion. The Foo Estate also raised for the first time, and without seeking leave to amend (or amending) the Foo Claim, new claims involving trust, third party beneficiary, and conversion theories of liability. The Trustee filed a reply (the "Reply," Bankr. Doc. No. 768) on June 5, 2007.

At the June 6 Hearing, the Bankruptcy Court announced that it would subject the Objection to the same standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss. (Bench Ruling at p. 2.) Following argument by counsel, the Bankruptcy Court announced that it would grant the

Trustee's Objection because issue preclusion bars the Foo Estate from re-litigating the LFG Court's determination in the Stay Order that the claims asserted in the Foo Claim are property of LFG's estate.  (Bench Ruling at pp. 5-7, 13.)   Additionally, the Bankruptcy Court determined that even if the Stay Order were not a final order, the claims asserted by the Foo Estate were indeed property of the LFG estate, not the Foo Estate.  (*Id.* at pp. 5-8, 13.)   The Bankruptcy Court further determined that LFG released RGL and its affiliates from any liability for LFG's claims, including those now purported to be asserted by the Foo Estate, but deferred ruling on whether Refco was an "affiliate" of RGL for purposes of the LFG-Refco Settlement.  (*Id.* at pp. 9-14.)

On June 14, 2007, the parties submitted a supplemental stipulation of fact (the "Stipulation," Bankr. Doc. No. 780), in which the parties stipulated that RGL owned 100% of Refco Regulated Companies, LLC, which in turn owned 100% of Refco Global Futures, LLC, which in turn owned 100% of Refco.  (Stipulation at ¶¶ 1-3.)  Nevertheless, the parties could not agree whether, as a result of the foregoing relationship, Refco was an affiliate of RGL for purposes of the LFG-Refco Settlement.  (*Id.* at ¶ 4.)  In their respective supplemental briefs on the affiliate issue filed on June 14, 2007, the Foo Estate (the "Foo Estate's Supplemental Brief," Bankr. Doc. No. 786) and the Trustee (the "Trustee's Supplemental Brief," Bankr. Doc. No. 787) took opposing positions on whether Refco and RGL were affiliates.

On June 22, 2007, the Bankruptcy Court issued the Order Sustaining Chapter 7 Trustee's Objection to the Claim of the Estate of Chi Min Foo (the "June 22 Order," Bankr. Doc. No. 791). In addition to holding that issue preclusion bars the Foo Estate from re-litigating whether the claims asserted by the Foo Estate are property of LFG's estate, the Bankruptcy Court held that Refco was and is an affiliate of RGL and therefore a beneficiary of LFG's release of claims in

11

the LFG-Refco Settlement. (June 22 Order at p. 2.) Accordingly, the Bankruptcy Court granted the Trustee's Objection and disallowed and expunged the Foo Claim in full. (*Id*.)

## SUMMARY OF ARGUMENT

The Bankruptcy Court properly determined that the Foo Estate is precluded from re-litigating the issue of whether the Foo Estate's claims against Refco are property of the LFG estate. The sole theory of liability set forth in the Foo Claim was that Refco assumed all of LFG's liabilities as a result of the LFG Asset Sale. The LFG Court previously had determined that such claims against Refco were property of the LFG estate. As the Bankruptcy Court correctly held, the Stay Order entered by the LFG Court is a final, nonappealable order, and therefore issue preclusion bars the Foo Estate from re-litigating whether its claims are property of the LFG Estate. Furthermore, the Bankruptcy Court properly determined that even if the Stay Order were not entitled to preclusive effect, the claims asserted by the Foo Estate were indeed property of the LFG estate, and, pursuant to the LFG-Refco Settlement, LFG had compromised and released all such claims. Moreover, even if those claims had not been compromised and released by LFG, the LFG Trust (not the Foo Estate) would retain the right to bring such claims. Further, the Foo Claim fails on its merits because insufficient facts were pled to support a claim that would entitled the Foo Estate to relief on a claim of successor liability, either as a matter of contract or common law, or any other legal theory. Finally, the new claims asserted in the Foo Estate's Response fail because the Foo Estate did not seek leave to or amend its proof of claim, and such claims fail on the merits in any event.

For these reasons, this Court should affirm the June 22 Order disallowing and expunging the Foo Claim.

## ARGUMENT

**I.      The Stay Order Conclusively Determined that the Foo Estate's Claims Against Refco are Property of the LFG Estate.**

During the LFG Case, the Foo Estate initiated the New York Litigation against Refco, alleging, among other things, that Refco had assumed all of LFG's liabilities to Foo.  (Obj. Exh. J at ¶¶ 28-38.)  LFG filed a motion to show cause because (i) the causes of action against Refco were property of the LFG estate, not the Foo Estate, and (ii) it attempted to divert funds from Refco to the Foo Estate that were property of the LFG estate.  (Obj. Exh. K & N.)  The LFG Court agreed with LFG and held that the New York Litigation was stayed, finding that the litigation "attempt[s] to assert causes of action that are properly held by the debtor, and as such are attempts to control the debtor's property prohibited by the automatic stay provision of § 362 of the Bankruptcy Code."  (Obj. Exh. L.)  The Stay Order has preclusive effect under the doctrine of issue preclusion because (1) the issue raised in the Trustee's Objection is the same issue as that in the LFG stay litigation — *i.e.*, whether the subject claims are property of LFG's estate, (2) the issue was actually litigated, (3) the issue litigated was necessary to support the Stay Order, and (4) there was a full and fair opportunity to litigate in the stay litigation.  *See In re PCH Assocs.*, 949 F.2d 585, 593 (2d Cir. 1991) (discussing the elements for issue preclusion). As the Bankruptcy Court held, the Foo Estate cannot now re-litigate whether its claims against Refco are property of the LFG estate, and therefore the Foo Claim must be disallowed.

**A.      The Stay Order Decided Whether the Foo Estate's Claims Against Refco are Property of the LFG Estate.**

The purpose of issue preclusion is to preclude a party from re-litigating an issue that has already been decided by another court.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984).  The Stay Order decided the exact issue that was presented to the Bankruptcy

Court — whether the Foo Estate's claim that "[Refco] assumed all of LFG's liabilities" is property of the LFG estate. (Obj. Exh. L.)

In seeking a determination that the New York Litigation was stayed, LFG argued (and the Foo Estate contested) that the Foo Estate's successor liability and other claims against Refco were property of LFG's estate. (Bench Ruling at p. 5; Obj. Exh. K. at ¶ 15; Obj. Exh. N at pp. 6-8.) The LFG Court agreed, holding that the Foo Estate "attempt[s] to assert causes of action that are properly held by the debtor, and as such are attempts to control the debtor's property prohibited by the automatic stay provision of § 362 of the Bankruptcy Code." (Obj. Exh. L.) Thus, the Bankruptcy Court correctly concluded that LFG's Stay Motion and Refco's Objection involved the same issue. (Bench Ruling at p. 4.)

The Foo Estate confusingly (and without support) contends that an indemnity provision in section 9 of the APA was LFG's "***only*** basis for seeking the stay order" in the LFG Case. (Appellants' Br. at p. 12 (bold and italics in original).) As the Bankruptcy Court found, however, this contention is flatly contradicted by the record. (Bench Ruling at p. 5 ("In paragraph 15 of the [Stay Motion], LFG asserted to the bankruptcy court presiding over its case that the claims in the [New York Litigation], if they had validity, would be property of LFG's estate…."); *see also* Obj. Exh. K at ¶ 15; Obj. Exh. N at pp. 6-8.) Thus, LFG clearly relied on a "property of the estate" theory in seeking relief from the LFG Court, not merely (as the Foo Estate contends) an indemnity provision of the APA.

The Foo Estate also asserts that LFG abandoned its "property of the estate" argument in the Stay Reply and, therefore, the issue was not before the LFG Court. (Appellants' Br. at pp. 11-12.) Not only is this factually incorrect (*see, e.g.*, Exh. Obj. N at pp. 6-8), but Appellants' position also is unprecedented — Appellants appear to be arguing that by failing to reiterate in a

reply brief each argument already made in an opening brief, the party has "abandoned" and "withdrawn" those arguments. Needless to say, there is no support for this argument.

### B.     LFG and the Foo Estate Actually Litigated Whether the Foo Estate's Claims Against Refco are Property of the LFG Estate.

The Foo Estate does not contest that it fully participated in the stay litigation before the LFG Court, but instead argues that the parties did not really litigate whether the claims asserted by the Foo Estate against Refco were property of the LFG estate. (Appellants' Br. at pp. 10-13.) As set forth in Section I.A. above, LFG clearly presented this issue to the LFG Court, the Foo Estate resisted LFG's motion, and the LFG Court found that the Foo Estate's claims against Refco in the New York Litigation "attempt to assert causes of action that are properly held by the debtor…." (Obj. Exh. L.) Thus, the parties plainly litigated whether, and the LFG Court decided that, the claims asserted by the Foo Estate were the LFG bankruptcy estate's property.[5]

### C.     A Finding that the Foo Estate's Claims Against Refco are the LFG Estate's Property Was Necessary to Support the Stay Order.

The Bankruptcy Court also properly determined that the issue of whether the Foo Estate's claims against Refco are the LFG estate's property was necessary to support the Stay Order. (Bench Ruling at p. 6 ("But for that determination that the litigation claims were the LFG estate's property, the LFG court would not have made such findings.").) Absent a finding that such claims were LFG's property, the LFG Court could not have found that the Foo Estate had violated the automatic stay in the LFG Case by asserting such claims against Refco. *See* 11 U.S.C. § 362(a)(3) (stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate").

---

[5] The Foo Estate also argues at length that the LFG Court's Stay Order was simply a "timing order," and that the LFG Court apparently therefore contemplated that the Foo Estate could bring the claims against Refco some time in the future. (Appellants' Br. at pp. 9-16.) Given that the LFG Court had approved LFG's settlement and release of those claims only one month earlier, Appellants' argument is plainly specious. Moreover, this contention is negated by the actual language of the Stay Order, which stated that the claims asserted by the Foo Estate are property of the LFG estate (not that the Foo Estate should be temporarily enjoined from pursuing the claims).

The Foo Estate argues that "the sole necessary basis for [the] order staying the Foo Claimants from pursuing Refco in state court was the indemnity/receivable issue in the LFG-Refco settlement," that the New York Litigation was stayed only because the Foo Estate's claims against Refco "overlapped" with LFG's claims, and that the LFG Court "did not find the Foo claims against Refco to be owned by the Debtor." (Appellants' Br. at pp. 12-13.) Again, the Foo Estate is wrong. Had the LFG Court stayed the New York Litigation because it merely "overlapped" with LFG's causes of action against Refco, the Stay Order necessarily would have been issued pursuant to section 105(a) of the Bankruptcy Code and the LFG Court's "related to" jurisdiction under 28 U.S.C. § 1334(b). *See Fisher v. Apostolou (In re Lake States Commodities, Inc.)*, 155 F.3d 876, 882 (7th Cir. 1998) (issuing section 105(a) injunction because, "[w]hile the Plaintiffs' claims are not "property of" the [debtor's] estate, it is difficult to imagine how those claims could be more closely "related to" it);[6] *see also In re Calpine Corp.*, 354 B.R. 45, 48-49 (Bankr. S.D.N.Y. 2007) (holding that section 105(a) allows bankruptcy courts to issue injunctions when section 362 does not automatically apply). The Stay Order plainly was issued pursuant to section 362 (and not section 105(a)), providing that the Foo Estate "attempt[s] to assert causes of action that are properly held by the debtor, and as such are attempts to control the debtor's property *prohibited by the automatic stay provision of § 362 of the Bankruptcy Code*." (Obj. Exh. L (emphasis added).) But for the determination that the claims asserted by the Foo Estate were LFG's property, the LFG Court could not have issued the Stay Order under

---

[6] In *Fisher*, the Seventh Circuit explained a bankruptcy court's ability to issue injunctions under section 105(a):

> In limited circumstances, the trustee may temporarily block adjudication of claims that are not property of the estate by petitioning the bankruptcy court to enjoin the other litigation, if it is sufficiently "related to" her own work on behalf of the estate. The jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor, to include "suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate," or "the allocation of property among creditors." To protect this jurisdiction, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a), including a stay.

155 F.3d at 882. (internal citations omitted).

section 362, and therefore a holding that the claims were property of LFG's estate was necessary to support the Stay Order.

> ### D.    The Foo Estate Had a Full and Fair Opportunity to Litigate the Issue Before the LFG Court.

The Foo Estate argues that the Stay Order is not a final order because it did not dispose of litigation; *i.e.*, the Stay Order did not *dismiss* the New York Litigation.  (Appellants' Br. at p. 17.)  In fact, as the Bankruptcy Court determined, the Stay Order did dispose of litigation — the litigation between LFG and the Foo Estate as to whether the subject claims were property of LFG's estate and therefore subject to the automatic stay.  (Bench Ruling at p. 6.)  The Stay Order fully resolved that dispute, and therefore is a final order for purposes of issue preclusion.  *See In re Jones*, No. 06-10105, 2007 WL 1651845, at *1 (1st Cir. BAP June 8, 2007) ("A bankruptcy court's order determining whether there has been a violation of the automatic stay is a final order that supports appellate jurisdiction."); *In re Perrin*, 361 B.R. 853, 855 (6th Cir. BAP 2007) ("The bankruptcy court's order finding a violation of the automatic stay is a final order."); *In re Yates*, 332 B.R. 1, 4 (10th Cir. BAP 2005) (holding that an order finding a violation of the automatic stay is a final, appealable order); *In re Heghman*, 316 B.R. 395, 400 (1st Cir. BAP 2004) (same).

While the Foo Estate does not contest that orders finding violations of the automatic stay can be final, appealable orders, it contends that the Stay Order was not final because the LFG Court did not find that the Foo Estate in fact violated the automatic stay.  (Appellants' Br. at pp. 17-18.)  As set forth above, this assertion is belied by the record and express terms of the Stay Order.

The Foo Estate further argues that the Stay Order is not a final order because it did not include an injunction requiring the dismissal of the New York Litigation.  (Appellants' Br. at p. 17.)  Again, the Foo Estate misstates the law.  The Stay Order reinforces the fact that section 362

of the Bankruptcy Code *automatically* enjoined the Foo Estate from bringing such claims against Refco; there was no need to dismiss the New York Litigation. (Obj. Exh. L; *see also* Obj. Exh. N at p. 11 ("LFG does not need further injunctive relief because Section 362 has already provided it with the requisite injunction.").) Moreover, because the lawsuit was filed in violation of the automatic stay, it is void *ab initio*. *See, e.g.*, *In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987), *cert. denied* 485 U.S. 1035 (1988) ("actions taken in violation of the stay are void and without effect") (quoting 2 L. King, Collier on Bankruptcy § 362.11 (15th ed. 1987)). Similarly, the Foo Estate is wrong in claiming that sanctions are required under applicable law in order for the Stay Order to constitute a final order. (Appellants' Br. at 18.) *See, e.g., In re Perrin*, 361 B.R. at 855 (holding that order finding willful violation of the automatic stay, but assessing no attorneys' fees, was a final order); *In re PVI Assocs.*, No. 93-15543, 1995 WL 20421, at *1 (E.D. Pa. Jan. 13, 1995) (order finding violation of automatic stay but denying motion for sanctions "is a final order and is, therefore, appealable").

Finally, the Foo Estate contends that the LFG Court decided that the stay litigation was not a core proceeding, but merely related to the LFG Case. (Appellants' Br. at p. 18.) Not only is the Foo Estate's bald assertion unsupported by any citation to the record, but also matters involving the automatic stay clearly are core proceedings. (*See* Bench Ruling at p. 6; *In re Nat'l Century Fin. Enters., Inc.*, 423 F.3d 567, 573 (6th Cir. 2005) ("The bankruptcy court had jurisdiction to enforce the automatic stay against the Louisiana action because … the motion to enforce constitutes a 'core proceeding' as defined in 28 U.S.C. § 157(b)(2)."); *In re Madison*, 249 B.R. 751, 757 (Bankr. N.D. Ill. 2000) ("a claim alleging willful violation of the automatic stay invokes the central protections and procedures of the bankruptcy process [and] is therefore a

core jurisdiction proceeding under 28 U.S.C. §§ 157 and 1334, and subject matter jurisdiction lies to hear, adjudicate, and enter final orders and judgment….").).[7]

Based on the foregoing, the Stay Order was a final and appealable order. Because the Foo Estate failed to appeal that order, the Foo Estate cannot re-litigate whether its claims against Refco were property of the LFG estate.

## II.    Creditors' Derivative Claims are Property of the Debtor's Estate.

Even if the Stay Order were not a final order, the LFG Court was "entirely correct" in its ruling that the claims asserted in the Foo Claim are the LFG estate's property and thus "these claims were claims of LFG's estate." (Bench Ruling at p. 7.) Second and Seventh Circuit authority provides that a creditor's derivative claims are property of the debtor's estate, and thus an action for successor liability against Refco (*i.e.*, a derivative claim held by all of LFG's creditors), whether raised in the New York Litigation or now, would be property of the LFG estate.

Legal rights or interests belonging to a bankruptcy estate are property of the estate, and therefore do not "belong to any individual creditor." *Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993). It is well-settled that a party must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). This rule has been developed primarily in the area of derivative shareholder claims, but courts have found the rule to be equally applicable to the

---

[7] Appellants further argue that the U.S. Constitution guarantees a right to a full and fair opportunity to litigate, of which they have been deprived (Appellants' Br. at p. 14); this, of course, pre-supposes that the claims are the Foo Estate's claims to bring, and that they can survive a motion to dismiss. The Foo Estate also argues that the stakes were different in the stay litigation than they are now, and therefore it would be inequitable to apply issue preclusion. (Appellants' Br. at pp. 14-16.) This argument is nonsensical, as the Foo Estate had the same economic incentive in 2002 (preservation of a $1.4 million claim against Refco) as it does now.

claims of creditors of a corporation. *See Solow v. Stone*, 994 F. Supp. 173, 178 (S.D.N.Y. 1998); *In re Sunrise Securities*, 916 F. 2d 874, 880 (3d Cir. 1990).

Where a claim belongs to the bankruptcy estate, the estate has the right to assert the claim in the first instance, and individual creditors (or shareholders) of the corporation generally do not have standing to assert the claim, and, in any event, should not be allowed to circumvent a trustee's authority to prosecute such claims. *See Wagoner*, 944 F.2d at 118 (2d Cir. 1991) (explaining that as a general matter, a trustee stands in the shoes of the debtor and has standing to bring any action that the debtor could have instituted prepetition). Thus, the "trustee has the sole responsibility to represent the estate, by bringing actions on its behalf to marshal assets for the benefit of the estate's creditors." *Fisher*, 155 F.3d at 879. Indeed, the trustee is the "only party who can sue to represent the interests of the creditors as a class." *Id.*

As the Bankruptcy Court recognized, to determine whether a claim is property of the estate or of an individual claimant, courts consider whether the claim is general or particular. (Bench Ruling at p. 7; *see also* Obj. at ¶¶ 72-76.)  "If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." *Kalb, Voorhis & Co.*, 8 F.3d at 132; *see also Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1349 (7th Cir. 1987), *cert denied*, 485 U.S. 906 (1988) ("[A] single creditor may not maintain an action on [its] behalf … if that creditor shares in an injury common to all creditors and has personally been injured only in an indirect manner.") (internal citations omitted).

In determining whether a claim is general or particular, courts generally apply the law of the jurisdiction in which the corporate debtor was organized. *See In re Ionosphere Clubs, Inc.*,

20

17 F.3d 600, 607 (2d Cir. 1994). LFG is a limited liability company organized under the laws of Illinois, so Illinois law should be considered in determining whether the Foo Claim is derivative of the LFG estate's claims against Refco. Under Illinois law, as under New York law, a claimant may bring an individual claim only in limited circumstances; namely where the claimant can allege an injury that is "separate and distinct from that suffered" by other claimants. *Spillyards v. Abboud*, 278 Ill. App. 3d 663, 671, 662 N.E.2d 1358, 1363 (1st Dist. 1996) (quoting *Moran v. Household Int'l, Inc.*, 490 A.2d 1059, 1069 (Del. Ch.), *aff'd*, 500 A.2d 1346 (Del. 1985); *see also Ionosphere Clubs*, 17 F.3d at 604 (discussing New York law).

Here, the Foo Estate asserts successor liability claims arising out of the LFG Asset Sale, alleging that Refco "assumed all of LFG's liabilities" and therefore Refco "assumed liability for Creditor's claims against LFG." (First DeLaurentis Declaration at ¶¶ 8-9). The Foo Claim does not allege an injury that is "separate and distinct" from that allegedly suffered by LFG's other creditors because, if Refco truly assumed all of LFG's liabilities, every one of LFG's creditors could assert an identical successor liability claim against Refco. Therefore, the Foo Estate's successor liability claims are general in nature and were property of the LFG estate. *See Kalb, Voorhis & Co.*, 8 F.3d at 132 (trustee can assert claims on behalf of all creditors); *St. Paul Fire & Marine Insur. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 697 (2d Cir. 1989) (same); *Koch Refining*, 831 F.2d at 1349 (a claim is general if it would result in liability to all creditors); *Fisher*, 155 F.3d at 879 (same); *In re OODC, LLC*, 321 B.R. 128, 137 (Bankr. D. Del. 2005) (holding that trustee could pursue successor liability claims and noting that "most other courts have found that the trustee in bankruptcy has standing to bring successor liability … suits on behalf of all creditors"); *In re H. King & Assocs.*, 295 B.R. 246, 267 (Bankr. N.D. Ill. 2003) (stating that a

successor liability claim is a general claim if recovery would result in a potentially higher distribution to all creditors).

Based on the foregoing, the Bankruptcy Court correctly concluded that LFG had the right to assert the claims now purported to be brought by the Foo Estate, and could settle and release them on behalf of LFG and all of its creditors, including the Foo Estate. (Bench Ruling at pp. 7-8; *see also Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988) ("The trustee is empowered to compromise causes of action belonging to the bankruptcy estate."); *In re Stinson*, 221 B.R. 726, 732 (Bankr. E.D. Mich. 1988) ("Only the trustee has the authority and discretion to prosecute, defend and settle, if appropriate in its judgment, such a cause of action.") (quoting 3 Collier on Bankruptcy ¶ 323.03[1], at 323-7 (Lawrence P. King ed., 15th ed. 1997).)

The Foo Estate asserts that the Bankruptcy Court's "conclusion was directly contrary to binding Second Circuit precedent in *In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992)." (Appellants' Br. at p. 20.) The Foo Estate misrepresents the holding of *Colonial Realty*. There, the chapter 7 trustee moved for an order determining that the FDIC had violated the automatic stay by commencing, as receiver for several failed banks, an action in federal district court to avoid the transfer of and recover funds the debtor had fraudulently transferred to another party. *Colonial Realty*, 980 F.2d at 127-28. On appeal, the Second Circuit noted in *dicta* that the FDIC's causes of actions did not become property of the debtor's estate because the federal statute empowering the FDIC to bring such actions specifically provides that "[t]he rights under this paragraph [§ 1821(d)(17)] of the [FDIC] ... shall be superior to any rights of a trustee or any other party (other than any party which is a Federal agency) under Title 11." *Id.* at 130 (quoting

12 U.S.C. § 1821(d)(17)).  There is no similar statute giving the Foo Estate a superior right to bring an action against Refco.[8]

The Foo Estate has not cited a single case actually supporting its position that a general claim held by all of a debtor's creditors is not property of the debtor's estate. Because the Foo Estate's claims against Refco, whether alleged in the New York Litigation or in the Foo Claim, were property of the LFG estate, even if the Stay Order were not final, the Bankruptcy Court's order should be affirmed because only LFG could prosecute or settle such claims.

**III.    The LFG Claims Against Refco Were Compromised and Released, and Have Not Been Abandoned to Creditors.**

**A.    The LFG Claims Against Refco Were Released.**

The Bankruptcy Court properly determined that the LFG estate compromised and released all claims arising out of the LFG Asset Sale, including the fraudulent transfer claims expressly brought by LFG in the LFG-RGL Adversary.  (Bench Ruling at p. 9-13; June 22 Order at p. 2.)   The release set forth in the LFG-Refco Settlement applied to "any and all claims [and] liabilities of whatever kind or nature in law, equity, or otherwise" arising "on account of, in any way relating to, or arising in connection with," among other things, the LFG Asset Sale and transfer of assets by LFG to RGL in connection with the APA.  (Obj. Exh. E at § 1.)

Refco was and is an affiliate of RGL.  The LFG-Refco Settlement defined "Refco" as, in relevant part, "Refco Group Ltd., LLC … and its affiliates…."  (*Id*. at p. 1.)  The LFG-Refco Settlement provides for the application of Illinois law.  (Obj. Exh. E at § 11.)  As set forth in the

---

[8] The Foo Estate also relies on *Fisher* to argue that a creditor's causes of action are not property of the debtor's estate.  (Appellants' Br. at 11.)  In that case, however, the Seventh Circuit found that certain creditors held individual causes of action for fraud against the defendants which the chapter 7 trustee could not assert.  *Fisher*, 155 F.3d at 880 ("the claims available to the trustee are not the same as those the [creditors] are trying to bring").   By contrast, the Foo Estate asserts generalized successor liability claims against Refco that all of LFG's creditors, and therefore the LFG estate, could assert against Refco.  Indeed, *Fisher* explicitly recognized that the "trustee has the sole responsibility to represent the estate, by bringing actions on its behalf to marshal assets for the benefit of the estate's creditors."  *Id*. at 879.

Trustee's Supplemental Brief, under Illinois law Refco was an affiliate of RGL because RGL indirectly owned and controlled 100% of Refco through two wholly-owned intermediaries. (Trustee's Supplemental Br. at pp. 2-3; Stipulation at ¶¶ 1-3.)  The Foo Estate does not contest this analysis of Illinois law in its brief.  Furthermore, as set forth in the Trustee's Supplemental Brief, even if the Foo Estate were correct in asserting that the Bankruptcy Code's definition of affiliate is applicable to the LFG-Refco Settlement (Appellants' Br. at ¶¶ 28-30), Refco was an affiliate of RGL because (1) limited liability companies such as Refco are corporations under 11 U.S.C. § 101(9)(A) (Trustee's Supplemental Br. at pp. 3-4); (2) Refco's membership interests were voting securities as defined by 11 U.S.C. § 101(49) (Trustee's Supplemental Br. at p. 5), which the Foo Estate does not contest in its brief; and (3) RGL owned 100% of Refco outstanding voting securities through two wholly owned intermediaries (Trustee's Supplemental Br. at p. 5), as the Foo Estate stipulated.  (Stipulation at ¶¶ 1-3.)  *See In re Reichmann Petroleum Corp.*, No. 06-60843, 2007 WL 869719, at *4 (Bankr. E.D. Tex. Mar. 19, 2007) (holding that a limited liability company was an affiliate under section 101(2)(B) because its ultimate parent company "indirectly owns or controls at least 20 percent of the outstanding voting shares").

Thus, under any conceivably applicable law, Refco was an affiliate of RGL for purposes of the LFG-Refco Settlement, and therefore LFG released all of its claims against Refco, including those claims now purported to be asserted by the Foo Estate.

### B.    The LFG-Refco Settlement Did Not Exclude the Claims the Foo Estate Purports to Assert Against Refco.

The Foo Estate argues that it is not bound by LFG's release of claims against Refco because it was not a party to the LFG-Refco Settlement, and thus it would be inequitable for the LFG-Foo Settlement to bind the Foo Estate.  (Appellants' Br. at pp. 22-23.)  The Foo Estate continues to miss the fundamental point — the claims the Foo Estate is now asserting against

Refco were LFG's claims, not the Foo Estate's claims, and therefore LFG could compromise and release such claims without the Foo Estate's agreement or consent.

The Foo Estate also argues that the claims were explicitly carved out of the LFG-Refco Settlement.  (*Id.* at pp. 23-24.)  The Foo Estate cites section 2.2 of the APA, which provides that LFG retained liability for any obligations or liabilities relating to proprietary trading accounts (Obj. Exh. D at § 2.2.), section 9.1 of the APA, which provides that LFG must indemnify RGL (and Refco) for any claims against RGL (and Refco) arising out of the proprietary trading accounts that LFG retained  (*Id.* at § 9.1),  and section 3 of the LFG-Refco Settlement, which states that the settlement does not affect LFG's indemnification responsibilities under the APA. (Obj. Exh. E at § 3.)  From these provisions and an assertion that RGL was actively or constructively aware of the Foo Estate's claims against Refco, the Foo Estate concludes that its claims against Refco are exempt from the release.  (Appellants' Br. at pp. 23-24.)  The Bankruptcy Court rightly concluded that this argument was nonsensical.  (Bench Ruling at pp. 10-11.)

Finally, the Foo Estate alleges that subsequent events demonstrate that the Foo Estate's claims against Refco were carved out of the LFG-Refco Settlement, asserting that the parties had a "tacit agreement" that the Foo Estate could pursue claims against Refco after the close of the LFG Case. (Appellants' Br. at pp. 4, 25-27.)  Neither RGL nor Refco ever agreed to carve out or in any way preserve the Foo Estate's claims.  Rather, as the LFG-Refco Settlement made clear, LFG settled and released all claims against RGL and Refco, with no carve out for any derivative claims held by the Foo Estate or other creditors.  (Obj. Exh. M at § 1.)[9]

---

[9]  The Foo Estate also argues that because Refco was not getting a release under the Foo-LFG Settlement, Refco therefore knew the Foo Estate's claims in the New York Litigation eventually would be pursued against Refco. (Appellants' Br. at pp. 25-27.)  But the Foo Estate's argument misses the mark; because those claims had been

Therefore, because the Foo-LFG Settlement could not retroactively resurrect claims LFG already had released in the LFG-Refco Settlement, and LFG's release of claims is binding.

### C. Even if Not Settled, the Claims the Foo Estate Purports to Assert Against Refco Would Still Be Property of the LFG Trust.

Moreover, even if the claims against Refco had not been compromised and released, they now would be property of the LFG Trust. Pursuant to the terms of the LFG Plan, the LFG Trust succeeded to all of LFG's rights, title and interest in any and all of LFG's assets, including LFG's right to pursue and compromise claim disputes and bankruptcy actions, and in particular the claims now asserted against Refco by the Foo Estate. (Obj. Exh. H at ¶ 2.) If, as the Foo Estate contends, those claims against Refco were somehow carved out of the LFG-Refco Settlement, the LFG Trust still would be entitled to assert them under the terms of the LFG Plan because the LFG Trust remains in existence and the claims have not been abandoned to the Foo Estate or any other party pursuant to section 554 of the Bankruptcy Code. 11 U.S.C. § 554(d) ("Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.").

### IV. The Foo Estate's Successor Liability Claims Plainly Fail on the Merits.

Even assuming, *arguendo*, that the claims asserted by the Foo Estate were not property of the LFG Estate, the claims would nonetheless fail on the merits. First, Refco did not contractually assume LFG's liabilities under the APA because Refco was not a party to the APA. (Obj. at ¶ 57; Obj. Exh. D.) Nor did RGL, Refco's purported predecessor in interest, assume LFG's liabilities. Section 1.2 of the APA specifically provides that RGL would not assume any obligations for claims arising out of the assets retained by LFG, which included any proprietary trading accounts carried on LFG's books. (Obj. at ¶ 58; Obj. Exh. D at § 1.2.)

---

settled and released (and were not owned by the Foo Estate in any event), Refco had no incentive (or even standing) to object to the Foo Estate's settlement with LFG.

Second, the Foo Estate has not pled sufficient facts, in either the New York Litigation or the Foo Claim, to support any common law theory for successor liability against Refco, such as "*de facto* merger" or "mere continuation."  (Obj. at ¶¶ 62-67.)  Indeed, the Foo Estate cannot establish a key requisite element of *de facto* merger or mere continuation, namely a continuity of ownership between LFG and Refco.  *See Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 46-48 (2d Cir. 2003) (finding no "*de facto* merger" because the plaintiff failed to allege facts showing a "continuity of ownership").

The obvious lack of substantive merit of the Foo Estate's successor liability claims against Refco's estate is an alternative, independent basis to affirm the Bankruptcy Court's disallowance of the Foo Claim.  *See ACEquip Ltd. v. American Eng'g Corp.*, 315 F.3d 151, 155 (2d Cir. 2003) ("Our court may, of course, affirm the district court's judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court.").

## V.    The Foo Estate Failed to Properly Plead or Preserve Any New Claims.

The Foo Estate alludes to having "two prongs" of claims against Refco.  (Appellants' Br. at p. 20 n.15.)  In its Response filed in the proceedings below, the Foo Estate argued that these two prongs encompassed seven individual causes of action, including breach of fiduciary duty, conversion, third party beneficiary, successor liability, fraudulent transfer, a claim that LFG (and then Refco) held Foo's funds in trust, and (without any explanation) a claim that Foo was a customer of Refco.  (Response at pp. 10-13.)   However, the *only* theory of liability asserted in the Foo Claim is the allegation that Refco "assumed all of LFG's liabilities" and therefore Refco "assumed liability for Creditor's claims against LFG."  (First DeLaurentis Declaration at ¶¶ 8-9; *see also* Bench Ruling at p. 8 (noting that the Foo Claim asserts only "successor liability or assumption of liability claims" against Refco).)  The Foo Estate never sought leave to amend its

proof of claim, and therefore any new or alternative claims identified for the first time in the Response were not properly before the Bankruptcy Court (and were not preserved for appeal). *See In re Drexel Burnham Lambert Group, Inc.*, 159 B.R. 420, 424-26 (S.D.N.Y. 1993) (stating that a creditor is required to seek leave from the court to file an amendment to its proof of claim once the debtor has filed a claim objection); *In re AM Int'l, Inc.*, 67 B.R. 79, 81 (Bankr. N.D. Ill. 1986) (same).

Moreover, even if the Foo Estate had properly alleged these new claims against Refco, as explained more fully above, any causes of action for breach of fiduciary duty, successor liability, and fraudulent transfer arising from the LFG Asset Sale would be general claims against Refco and therefore property of the LFG estate.  The claims that the Foo Estate was a third party beneficiary to an alleged oral contract between LFG and RGL (or Refco) fails because either (i) the claim is general and all of LFG's creditors were beneficiaries of the oral contract, and therefore is property of the LFG estate, or (ii) the claim is individual, in which case the Foo Estate has not pled (nor does the record support) that any party to the alleged oral contract specifically intended to benefit the Foo Estate but not LFG's other creditors.  *See Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006) ("a non-party must be the intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed") (internal citations omitted).  As to the theories of individual liability, the Bankruptcy Court rejected the trust claim because "there is nothing in the Foo estate's proof of claim that alleges any of the bases for a constructive trust claim against Refco LLC or, for that matter, against LFG … especially given the narrow application of constructive trust principles in bankruptcy cases." (Bench Ruling at pp. 8-9 (citing *In re First Central Fin. Corp.*, 377 F.3d 209 (2d Cir. 2004); *In re Adelphia Commc'ns Corp.*, 325 B.R. 89, 112-13 (Bankr. S.D.N.Y. 2005); *In re GGSI*

*Liquidation, Inc.*, 351 B.R. 529, 593 (Bankr. N.D. Ill. 2006).)  Likewise, the conversion claim fails because the Foo Estate has not pled any of the requisite elements, nor even identified any specific property that was allegedly converted. *See In re Chateaugay Corp.*, 156 B.R. 391, 400 n.10 (S.D.N.Y. 1993) (rejecting conversion claim because plaintiff did not identify specific property).  Indeed, the only thing clear from the record is that the Foo Estate's claims for 1999 Trading Profits is not a claim to recover specifically identifiable property.  Finally, there is no basis for any customer claim against Refco because the LFG Court already determined (and the record plainly demonstrates) that Foo was not a customer of LFG. (Obj. Exh. I at ¶¶ C-D.).  Because the Foo Estate failed to assert these new claims in its proof of claim and failed to seek leave to amend the claim, and because the claims would fail on the merits in any event, the Bankruptcy Court's decision should be affirmed.

## **CONCLUSION**

The LFG Court held that the Foo Estate's "assumption of all liability" and other claims against Refco are property of the LFG estate, and the Foo Estate is barred from re-litigating that issue by the doctrine of issue preclusion.  That conclusion is supported by clear Second and Seventh Circuit authority holding that a creditor's derivative claims are property of the debtor's estate, and thus an action for successor liability against Refco, whether raised in the New York Litigation or now, is property of the LFG estate.  Moreover, LFG released all such claims against Refco pursuant to the LFG-Refco Settlement and, even if it had not done so, the LFG Trust would still have the right to pursue the claims.  Finally, the Foo Claim fails on the merits.

Therefore, the Foo Estate is barred from asserting these claims against Refco, and the Bankruptcy Court's disallowance of the Foo Claim should be affirmed.

Dated: New York, New York
       August 22, 2007                    By:       */s/ Vincent E. Lazar*


                                     JENNER & BLOCK LLP
                                     Vincent E. Lazar (*pro hac vice* pending)
                                     Jerry L. Switzer, Jr. (*pro hac vice* pending)
                                     330 N. Wabash Avenue
                                     Chicago, Illinois 60611
                                     (312) 222-9350

                                     *Special Commodities Bankruptcy Counsel to the Chapter 7 Trustee of Refco, LLC*

                                     -and-

                                     TOGUT, SEGAL & SEGAL LLP
                                     Albert Togut (AT 9759)
                                     Scott E. Ratner (SR 0015)
                                     One Penn Plaza, Suite 3335
                                     New York, New York 10119
                                     (212) 594-5000

                                     *General Bankruptcy Counsel to the Chapter 7 Trustee of Refco, LLC*